Foster *vs.* The Justices of the Inferior Court of Cherokee County.

---

No. 38.—IRA R. FOSTER, plaintiff in error, *vs.* THE JUTICES OF THE INFERIOR COURT OF CHEROKEE COUNTY, defendants.

[1.] It is a condition precedent before a County Treasurer can enter upon the duties of his office, that he should give bond and security, and not having done so, he does not legally hold the office.

[2.] Before the Inferior Court can issue execution against a County Treasurer for a balance in his hands, ten days' written notice is required by Statute to

Foster *vs.* The Justices of the Inferior Court of Cherokee County.

be given him, and the order of the Court under which the *fi. fa.* is issued, must show that such notice has been given.

[3.] When the Inferior Court have passed an order, requiring the Clerk to issue *fi. fa.* against the Treasurer, but the Clerk failed to record such order: *Held*, that it is competent for the Inferior Court, after the *fi. fa.* has been issued, to place the order on the minutes, *nunc pro tunc.*

Rule, in Cherokee Superior Court. Decided by Judge HOOPER, September Term, 1850.

This was a rule against the Sheriff to pay over certain money arising from the sale of the property of one H. H. Waters. The money was claimed by the Justices of the Inferior Court, on a *fi. fa.* issued by said Court, in 1845, against Waters, for a balance in his hands as County Treasurer. Ira R. Foster claimed the money on a *fi. fa.* of younger date, and contended that the *fi. fa.* from the Inferior Court was void.

It appeared that no order of the Inferior Court, directing their Clerk to issue the *fi. fa.* was on record until 1850, when a rule was passed, reciting that such an order had been given previous to the issue by the Clerk of said *fi. fa.* but that, whereas the Clerk had failed to put said order on the minutes, that the same be put on the minutes, *nunc pro tunc.* It also appeared, that no notice had been given to Waters, previous to issuing the *fi. fa.* by the Inferior Court, because he was, at that time, out of the State. Waters had never taken an oath of office, nor given bond as County Treasurer.

For these reasons Foster contended that the *fi. fa.* of the Inferior Court was void.

The Court decided otherwise, and ordered the money to be paid to the Inferior Court, and counsel for Foster excepted.

J. W. H. UNDERWOOD, for plaintiff in error.

OVERBY, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

The only question involved in this case, is the validity of the execution issued against Waters, as County Treasurer of Cher-

okee County. Two of the objections taken to the execution are, in our judgment, *fatal* to it.

[1.] The first section of the Act of 1825, authorizing the appointment of a County Treasurer, declares, " That he shall, before he enters upon the duties of his office, give bond, with security, to the Justices of the Inferior Court, for the faithful discharge of his duty, in such sum as they shall prescribe, not less than double the amount of the funds in hand, and the annual revenue of the County, and shall, moreover, take an oath well and truly to discharge the duties of his office." *Prince*, 185. The first objection to the execution is, that Waters never gave any bond, with security, for the faithful discharge of his duty as County Treasurer, nor took the oath of office, as required by the provisions of the above recited Act. It appears that the records of the Inferior Court did not show that any *bond and security* had been given by Waters, or that he had even taken the oath required; nor was there any *other evidence* that he had complied with the law in that respect, and the execution issued against Waters *alone.* Before he can be considered as a County Treasurer, in the eye of the law, and perform the duties of that office, he must first have complied with the provisions of the Statute, which authorized his appointment. The giving bond and security was, at least, a *condition precedent* to his entering upon the duties of the office.

[2.] The 6th section of the Act of 1825, gives the authority to the Justices of the Inferior Court, or a majority of them, " to issue execution against the *County Treasurer* and his *securities,* for the amount in his hands, on his failing to pay or account therefor, within ten days after *written notice* from such Justices to that effect. *Prince*, 186.

The authority of the Clerk to issue the execution against Waters, is to be found in the following order or judgment of the Inferior Court: " *Cherokee County, March 14th,* 1845—Ordered by the Court, that the Clerk of this Court do forthwith issue an execution against Henry H. Waters, former County Treasurer for the County aforesaid, in favor of the Justices of the Inferior Court for said County and State, for the sum of five hundred and

twenty-four dollars, for the amount detained in his hands and possession, with interest thereon, at eight per cent. per annum."

This being a summary proceeding, unknown to the Common Law, must be construed *strictly*. The Statute only authorizes an execution to issue against a County Treasurer, for the amount of money in his hands, *on his failing to pay or account therefor within ten days after written notice from the Justices of the Inferior Court to that effect.*

From the record in this case, it appears that Waters had gone beyond the limits of the State, and for that reason the Court below held that notice was unnecessary. It is a principle of natural justice, which Courts are never at liberty to dispense with, *unless under the mandate of positive law*, that no person shall be condemned unheard, or without an *opportunity* of being heard. *Flint River Steamboat Co. vs. Foster*, 5 *Geo. Rep.* 202.

The mandate of the law, in the Act of 1825 is, that the County Treasurer shall have *written notice* to account for the money in his hands, from the Justices of the Inferior Court, and upon his failing to do so, and pay over the same within ten days thereafter, an execution may issue. The County Treasurer, being out of the limits of the State, is not made an *exception* by the Act requiring the *written notice*, and the Courts cannot make it one without palpable judicial legislation.

Besides, it does not appear on the face of the judgment of the Justices of the Inferior Court, ordering the execution to issue, that any *notice*, as required by the Act, had been given to Waters, or that he was beyond the limits of the State—conceding that the latter fact would have dispensed with notice, which we hold would not have been sufficient, according to the *positive* mandate of the Statute. The judgment of the Justices of the Inferior Court is the foundation upon which the execution is based, and that judgment should show, upon its face, such facts as would authorize the execution to issue, according to the provisions of the Statutes affording the summary remedy against the County Treasurer.

[3.] We overrule the objection taken to the judgment being entered, *nunc pro tunc*, for the reason that it appears, from the re-

cord, that the judgment was regularly passed by the Justices of the Inferior Court, on the 14th March, 1845, and that the Clerk failed to enter it upon the minutes of the Court, *at that time*, as he should have done. The order of the 20th August, 1850, only directs the Clerk to enter the judgment passed on the 14th March, 1845, upon the minutes of the Court.

Let the judgment of the Court below be reversed.