MORTON, guardian, *vs.* SIMS.

1. In issuing a commission to examine a person alleged to be imbecile from old age or other cause, and incompetent to manage his estate, and in appointing a guardian for such imbecile person on the report of the commissioners, the ordinary exercises a special and limited jurisdiction. The proceedings are summary and must be construed strictly. They should show on their face such facts, especially touching the giving of notice, as will authorize the judgment appointing a guardian.

2. If the nearest adult relatives of the alleged imbecile are themselves the petitioners for the appointment of a guardian, the ten days notice provided for in section 1855 of the Code, should be given to three of the next nearest, or if there be no adult relatives within this state except the petitioners, then, in order that the spirit of the section as well as of the general law may be observed, the ordinary should either require the ten days notice to be given to the alleged imbecile himself, or else designate by order a guardian *ad litem* to receive the notice for him.

3. A commission issued without the requisite notice, and neither preceded nor followed by the appointment of a guardian *ad litem,* is not aided by the presence of the imbecile and his representation by counsel, even where the counsel gives his consent to the judgment appointing the guardian, it appearing that the commission was executed on the next day after it was issued, and that the judgment followed immediately. The object of the notice is that there may be due warning to make objection for legal cause to the commission or any of the commissioners, as well as to prepare for adducing evidence on the main question.

Guardian and ward. Ordinary. Jurisdiction. Lunatic. Service. Judgment. Before Judge POTTLE. Oglethorpe Superior Court. April Term, 1879.

On February 10, 1879, William H. Sims, of Lowndes county, Miss., and S. A. M. Morton and John B. Morton,

of Oglethorpe county, Georgia, filed their petition in the court of ordinary of the county last aforesaid, representing that James S. Sims, of said county, on account of imbecility from infirm health and old age was incapable of managing his estate, and liable under the laws of Georgia to have a guardian appointed in his behalf; that they were the three nearest adult relatives of said imbecile residing in this state to whom notice could be given under the statute. The premises considered, they prayed that a commission be issued to eighteen discreet and proper persons, one of whom should be a physician, requiring any twelve of them, including the physician, to examine by inspection said James S. Sims, and to examine witnesses on oath if necessary as to his condition and capacity to manage his estate, and to make their return touching said inquiry as required by law, and that upon such return being made in accord with the allegations of this petition, that the court would appoint said John B. Morton guardian, etc.

On the same day the ordinary issued a commission as prayed for. On the succeeding day the commissioners reported their finding to be in accordance with the allegations of the petition. Whereupon the ordinary passed an order reciting the foregoing report, and appointing John B. Morton guardian of the person and property of said James S. Sims, upon his giving bond and security in the sum of $20,000.00, and taking the oath required by law.

On March 5th thereafter, James S. Sims moved that the judgment appointing the guardian be set aside on the following grounds:

1. Because the movant was never served with a copy of the proceedings on which said judgment was based, nor did he waive service, or authorize any one to make such waiver for him.

2. Because the petition does not bear date ten days before the same was heard and determined.

3. Because no guardian *ad litem* was appointed by the court to represent movant, when the pleadings show that

his three nearest adult relatives were the petitioners, and as such proceeding against him.

4. Because the record does not show that the movant was examined by inspection as required by law, or in any other manner examined by the commission or court.

5. Because the order of the ordinary does not recite a compliance with the requisition of the law as to notice of the proceedings, nor does the record anywhere show such compliance.

Service of the motion was had, and by consent it was heard on April 14th following. At the hearing, petitioners prayed that the judgment rendered on February 11 past, be so amended as to state the fact that the said James S. Sims was then and there present at the trial, and represented by Samuel Lumpkin, an attorney of this court, as his counsel, and that said counsel consented to said judgment. The amendment was ordered over the objection of counsel for movant. The ordinary then overruled the motion to set aside the judgment appointing the guardian. From this decision James S. Sims appealed to the superior court. On the hearing in that tribunal, the judgment of the ordinary was reversed, and the appointment of the guardian ordered vacated. To this judgment Morton, guardian, excepted.

SAMUEL LUMPKIN; W. G. JOHNSON; H. K. McCAY, for plaintiff in error.

McWHORTER BROS.; JNO. C. REED; J. T. OLIVER; PHIL. COOK JR., for defendant.

BLECKLEY, Justice.

1. The proceedings to put Dr. Sims under guardianship did not take place in the court of ordinary proper. In issuing the commission, and in appointing the guardian, the ordinary exercised a special and limited jurisdiction, regulated by sections 1855 and 1856 of the Code. The proceedings which these sections provide for are swift and summary,

and must therefore be construed strictly. They should show on their face such facts, especially touching the giving of notice, as will authorize the legal appointment of a guardian. This degree of strictness holds as to all courts of limited jurisdiction. 9 *Ga.*, 185 ; 12 *Ib.*, 424; 13 *Ib.*, 68. In ruling upon the motion to set aside the judgment appointing a guardian for Dr. Sims, the question is, whether upon the face of that judgment, reading it in connection with the balance of the record to which it belongs, enough appears to show that it was duly rendered. The trial is to be by inspection, and consists only in comparing the judgment and its preliminaries with the law.

2. After declaring that ordinaries may appoint guardians for idiots, lunatics, persons insane or deaf and dumb, habitual drunkards, and for "persons imbecile from old age or other cause, and incapable of managing their estates," the Code goes on to point out the mode of procedure as follows : §1855. "Upon the petition of any person on oath, setting forth that another is liable to have a guardian appointed under the provisions of this article, the ordinary, upon proof that ten days' notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within this state, shall issue a commission directed to any eighteen discreet and proper persons, one of whom shall be a physician, requiring any twelve of them, including the physician, to examine by inspection the person for whom guardianship is sought, and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in said return under which of said classes they find him to come. Such commissioners shall be first sworn by a justice of the peace, ' well and truly to execute the said commission to the best of their skill and ability,' which oath shall be returned with their verdict." §1856. "Upon such return finding the person to be as alleged in the petition, or within either of said classes, the

ordinary shall appoint a guardian for him." There is
to be a petition on oath, with proof of ten days' notice
of the application to three of the nearest adult relatives,
or proof that no adult relative of the alleged imbecile is
within this state. The proof made was only that the peti-
tioners themselves were the three nearest adult relatives
residing in this state, to whom notice could be given under
the statute. Of course, it would be absurd for the peti-
tioners to give notice to themselves of their own application,
and this being so, they are not the relatives appointed by
the statute to receive notice. They are simply to be
counted out, just as if they were not relatives at all, and
the notice ought to have been given to the three next near-
est relatives within the state, and the ordinary had no power
to issue the commission without proof that it had been
given, or else that there was here no adult relative to be
notified. The scheme of the statute is to serve notice upon
three, if that many are here, and if there be less than that
many, upon two or one, as the case may be. If none is
here, then according to the letter of the statute, the ordi-
nary may proceed upon proof of that fact; but, we think,
as matter of practice, and to comply with the spirit of the
statute, as well as of the general law, it would be better for
the ordinary to require the notice to be given to the alleged
imbecile himself, or else designate by order a guardian *ad
litem* to receive notice for him. It is, to say the least,
doubtful whether the property of an adult citizen can be
taken out of his custody and committed to guardianship
without previous warning served either upon him or upon
some person duly constituted by law or by some legal tribu-
nal to be notified in his stead. "If it was unreasonable, in
the opinion of the Roman governor, to send a prisoner and
not to signify withal the crimes alleged against him, the
law judges it to be equally so, to pass upon the dearest
civil rights of the citizen, without first giving him *notice* of
his adversary's complaint." 6 *Ga.,* 483. "The truth is,
that at the door of every temple of the laws in this broad

land, stands justice, with her preliminary requirement upon all administrators—'You shall condemn no man unheard.' The requirement is as old at least as *magna charta.* It is the most precious of all gifts of freedom, that no man be disseized of his property, or deprived of his liberty, or in any way injured, ' *nisi per legale judicium parium suorum, vel per legem terrae.*' " 5 *Ga.,* 516. "It is a principle of natural justice which courts are never at liberty to dispense with, *unless under the mandate of positive law,* that no person shall be condemned unheard." 9 *Ga.,* 188. In the present case, however, the petitioners did not carry their proof far enough to enable the ordinary to issue the commission even on the letter of the statute, for they neither proved notice to any relative, nor that there was no relative to be notified. They treated themselves as representing both sides of the case because they were the nearest relatives, whereas, there is no hint in the statute that those whose duty it is to give notice are competent to receive it, or that it will be dispensed with because they would be the persons to be notified if others and not themselves were petitioners. Nothing is more certain than that there was a failure to comply with the statute in respect to the important step of notice, and for that defect in the proceedings the judgment appointing the guardian was properly set aside.

3. We think there was not any saving efficacy in the fact that Dr. Sims was present at the so-called trial, and was also represented by counsel, even if the counsel did consent to the judgment. The system of the statute is one of coercion, not of consent. If a man is really an imbecile he is incapable of consenting, and what he does by his counsel is no better than if he did it in person. Any consent of counsel is at bottom the consent of his client—nothing more. It is not pretended that either of them was before the ordinary when the commission was issued, or that there was any opportunity afforded to object to that part of the ordinary's action. The misstep was in issuing the commission, without

requiring the petitioners to comply with the law as to notice. The object of notice is that there may be due warning to make objection for legal cause to the commission or any of the commissioners, as well as to prepare for adducing evidence on the main question. The notice is to precede by ten days the issuing of the commission. Why is this, if not for both of the purposes which we have specified? There was too much haste. The commission issued one day, was executed the next, and the judgment appointing the guardian followed immediately. Action, trial and judgment in two days, and no previous notice! The surprise and shock of such swift inquisition into an old gentleman's wits might so confound him as to prepare him for consenting, through his counsel, to being adjudged an imbecile.

Judgment affirmed.