## YEOMANS *v.* WILLIAMS.

The ordinary has no authority to issue a commission of lunacy under the Civil Code, § 2573, where the alleged lunatic has three adult relatives living in this State, until after the expiration of ten days from the time notice has been given to such relatives of the proceeding. The relatives thus to be notified can not confer jurisdiction upon the ordinary by waiving the notice prescribed by law.

Submitted June 11, — Decided June 26, 1903.

Guardianship of imbecile. Before Judge Roberts. Montgomery superior court. October 31, 1902.

*J. B. Geiger,* for plaintiff.　　　*D. C. McLennan,* for defendant.

COBB, J. In England the custody of lunatics and the management of their property have from a very early time been vested in the Crown. The Sovereign as parens patriæ has been treated as the peculiar and rightful custodian and protector of all of such un-

fortunate persons. This authority was not exercised directly by the Sovereign, but through the chancellor, and not through him by virtue of his judicial office, but as the delegate of the Crown, and an' appeal from his order in such a matter was to the King in council and not to the House of Lords. These duties devolved upon the Sovereign under the common law, but they were regulated by statute. See Bisp. Eq. (6th ed.) § 551; 16 Am. & Eng. Enc. L. (2d ed.) 565. The theory of the ancient English law was that the Sovereign would see that such unfortunates as lunatics were properly guarded against dangers to their persons and estates. In this country the custody of lunatics and the management of their property are, as a general rule, committed by statutes to courts therein designated. In some of the States courts of chancery exercise this jurisdiction; in others courts of common law ; while in others special tribunals are erected with jurisdiction over such matters. To the last class belongs our own State. No matter what court has jurisdiction of these matters in this country, the theory of the English law still prevails,' and that is, the court as the representative of the people — the parens patriæ of our law and institutions, is simply taking steps to save the person and property of the lunatic from such dangers as may imperil them. The commission of lunacy of our law, the successor of the writ de lunatico inquirendo of the English law, is simply the people, through the particular court discharging the duty which rested upon the Sovereign under the English system of determining whether one to whom the public owes the duty of care and protection is in such a position that this protection should be extended to him and his property saved for his benefit. Under the English practice, if the return of the commissioners appointed to investigate the question of the mental condition of the alleged lunatic improperly found the party to be a lunatic, that return might be traversed either by the alleged lunatic or any one claiming under a contract with him. In some of the States which have followed substantially the English law it has been held that the failure to serve notice on the alleged lunatic does not invalidate the proceeding, as the lunatic is not conclusively bound by the return of the commission. See, in this connection, Bisp. Eq. (6th ed.) § 564; 16 Am. & Eng. Enc. L. (2d ed.) 567. In this country as a general rule it has been held that the lunatic is entitled to reasonable notice of the time and place of the

inquisition and has a right to be present and contest the proceedings; and it has been said that even where the statute does not provide for notice to the lunatic, it will be presumed that reasonable notice was intended to be given.    16 Am. & Eng. Enc. L. (2d ed.) 567-8.    See also *Morton* v. *Sims*, 64 *Ga.* 298; 10 Enc. P. & P. 1184.    The only parties at interest in such a proceeding are the public and the alleged lunatic.    If notice is required to be given to any one else than the lunatic, such notice is not intended for any other purpose than that such persons, whoever they may be, shall be called in, not in their own right for any purpose, but simply to aid the public through the court in its determination of the status of the individual whose mental condition is under investigation.

In this State, instead of requiring notice to be given to the lunatic, the statute requires that notice be given to his three nearest adult relatives, if there are any such in this State; and if there are none such here, the statute does not in terms require notice to be given any one.    It was nevertheless said in *Morton* v. *Sims*, supra, that where there were no adult relatives of the alleged lunatic in this State, or the three nearest relatives were themselves the petitioners, ten days notice should be given either to the alleged lunatic himself or to some one designated by order as guardian ad litem. In the present case the three nearest relatives were served.    The record does not disclose that any notice was given to the alleged lunatic, and no question is raised as to the effect of the absence of such notice; and hence nothing said in this case is to be construed as an intimation that under our statute notice to the alleged lunatic is indispensably necessary when proper notice has been given to the three nearest adult relatives.    The sole question in the present case is as to the right of the three nearest adult relatives who have been served to waive the provision of the statute requiring ten days to elapse before the ordinary shall issue a commission.    The three adult relatives are notified simply in order that there may be some one who will probably be interested in informing the court as to the true status of the individual whose mental condition is under investigation and who will probably, on account of their relationship to him, be interested more than others in preventing the court from being imposed upon by those who inaugurated the proceeding.    The notice is not given to them for their benefit, but for the benefit of the court, the representative of the public in the matter.

As was said by Judge Bleckley, in *Morton* v. *Sims,* supra, "the proceedings which these sections provide for are swift and summary, and must therefore be construed strictly." Giving to them such a construction, we see nothing to authorize the ordinary to proceed in any case, where there are three adult relatives residing in this State, until after the expiration of ten days from the time notice is served upon them. Notice and the lapse of time are both jurisdictional facts. The record must disclose both; and in the absence of either, the ordinary is without jurisdiction. A party may waive or renounce that which the law has established in his favor and for his benefit, but even this right is limited; it can not be exercised so as to injuriously affect either the rights of others or of the public. Political Code, § 10. Certainly no right of waiver by a party exists in reference to a matter which is not established in any way for his benefit. No one can waive that in which he has no concern. As said above, the relatives of the alleged lunatic have no direct interest in the inquisition, and the notice is given to them simply that they may come into court and aid the ordinary in determining the mental status of the alleged lunatic. The proceeding not being instituted for their benefit, and having no direct interest in the result of the inquisition, they can not waive any of the essential facts necessary to give jurisdiction to the officer who has the matter under control. In the present case the application was made, the commission was issued, and the judgment entered, all in less than four days. As was said in *Morton* v. *Sims,* supra, "there was too much haste." ` If this unfortunate old lady whose mental status is under investigation is really a lunatic, that fact must be determined in the manner prescribed by law. · If it can not be established in this way, it should not be allowed to be established at all. The court did not err in dismissing the entire proceeding.

<div style="text-align:center">

*Judgment affirmed.    All the Justices concur.*