### DICKSON *v.* HICKS, sheriff, *et al.*

1. The act of 1918 (Acts 1918, p. 162), which provides that "upon the petition of any person on oath setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days' notice of such application has been given to the three nearest adult relatives of such person, . . and affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury, . . such ordinary shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing," etc., is not in conflict with, and does not repeal, that portion of the Civil Code of 1910, § 3101, which provides that where any person shall make oath that an insane person, for public safety or other good and sufficient reasons, should not be longer left at large, the ordinary shall issue a warrant as in criminal cases for the arrest of such insane person to be brought before him on a day specified, etc. The act of 1918 and Civil Code § 3101 provide for different classes of insane persons who shall be brought before a commission or the ordinary, as the case may be, for investigation.

2. The court did not err in sustaining the demurrer and in dismissing the petition for habeas corpus.

No. 4815.    JUNE 19, 1925.

Habeas corpus.    Before Judge Mathews.    Bibb superior court. February 11, 1925.

Mrs. W. I. Dickson filed her petition for habeas corpus against Jim Hicks, sheriff, and Tom McCommons, jailer of Bibb County, alleging as follows: She is illegally restrained of her liberty by being confined in the common jail of the county. The cause or pretense of her restraint by the sheriff and jailer is under a warrant issued by C. M. Wiley, ordinary, on January 28, 1925, from which it appears that F. R. Nalls is prosecutor, he having made the affidavit upon which the warrant was issued. On January 2, 1925, Nalls petitioned the ordinary for a commission of lunacy to investigate the mental condition of Mrs. Dickson; she was promptly

arrested and confined in the Bibb County jail pending the trial, where she has been continuously confined up to the present time. The commission was duly appointed as required by law, and after a regular investigation the commission made its return finding the plaintiff to be "a delusionary paranoiac and fit subject for the Georgia State Sanitarium." Upon the return of the verdict the ordinary adjudged her a lunatic—a person of unsound mind, and ordered that she be committed to the Georgia State Sanitarium. Plaintiff promptly paid all costs that had accrued, gave an appeal bond for all future costs and damages, entered an appeal to the superior court of Bibb County, and demanded her release. The ordinary, on January 28, 1925, passed an order releasing her from custody. Within a few minutes after the signing of the order of release, and before she was discharged from custody, F. R. Nalls made an affidavit, and the ordinary promptly issued a warrant ordering the arrest of Mrs. Dickson and directing that the sheriff or his lawful deputies keep her in safe confinement until such time as the ordinary might investigate the facts and determine whether she be an insane person to be committed to the Georgia State Sanitarium, and directing that she be confined until further order of the court. Before the sheriff could execute the first order of release he was handed the warrant whereby Mrs. Dickson was then and is now illegally restrained of her liberty and confined in the common jail of Bibb County, although she is not dangerous or insane in any way. She was arrested and is now being detained evidently under § 3101 of the Civil Code of 1910, which was repealed by the act of the legislature of 1918 (Ga. L. 1918, p. 162). Nalls, having proceeded in the first instance as required by law, had no right or authority to institute such proceeding, and the making of the second affidavit by Nalls and the issuing of the warrant by the ordinary and the arrest and detention of plaintiff under the warrant were illegal. The sole object and purpose of the warrant is to deprive the plaintiff of her constitutional right of appeal to a jury in the superior court and to deprive her of her liberty pending the appeal, and is without authority of any existing statute or lawful authority. The prosecutor in his first effort against plaintiff selected the only legal method of procedure; and notwithstanding she was legally and justly discharged in the first proceeding, Nalls then resorted to the illegal method herein com-

plained of, for the purpose of defeating her right to appeal and to deprive her of her liberty, contrary to law. There has been no change whatever in her mental condition from the date of the return of the commission to the present time. The plaintiff, though temporarily deprived of her liberty by the proceeding first instituted, was entitled to her liberty pending her appeal, and the status of her mental condition remained unchanged in the interim of the few minutes between the signing of the order for her release and the issuing of the warrant; and she is illegally deprived of her liberty, by reason of the unlawful and illegal proceeding instituted by Nalls. Since filing her appeal and the order granting a release she has never been at large, and therefore no occasion has ever occurred where section 3101 of the Civil Code of 1910 could be invoked in regard to her. The question whether or not she should be confined to the Georgia State Sanitarium and the question of her sanity, under the law, can only be determined by a jury in the superior court; and the ordinary had no authority or jurisdiction, after an appeal had been regularly entered, to interfere by the method herein complained of, and had no legal authority by subsequent proceedings in his court to interfere with the legal, orderly, and regular proceeding of the case which had been carried by appeal to the superior court of Bibb County in the manner prescribed by law.

The petition was demurred to upon the ground that it set out no facts authorizing the writ of habeas corpus or entitling the applicant to her liberty. The trial judge, after the hearing on the petition and demurrer, ordered that the petition for habeas corpus be dismissed. To this judgment the plaintiff excepted.

*M. Felton Hatcher* and *Clements & Clements,* for plaintiff.

*Charles H. Garrett, solicitor-general,* for defendants.

HILL, J. (After stating the foregoing facts.) The controlling question in the present case is whether the act of 1918 (Acts 1918, p. 162) superseded and repealed the existing law on the subject of lunacy at the time of the passage of the act, and abolished the distinction made in the law prior to the act of 1918 between lunacy proceedings provided by the Civil Code of 1910, § 3092 et seq., and lunacy proceedings provided by § 3101. Let us see, then, what the code provided on the above subject at the time of the passage of the act of 1918, and also what the act of 1918 provided. The

Civil Code, 1910, § 3092, provides: "Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within this State, shall issue a commission directed to any eighteen discreet and proper persons, one of whom shall be a physician, requiring any twelve of them, including the physician, to examine by inspection the person for whom guardianship (or admission to the sanitarium) is sought; provided, that in all lunacy cases the number of jurors shall be six, one of whom shall be a physician, unless twelve are demanded by the party to be tried, or by some one of his relatives or friends; and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in such return under which such classes they find said person to come. Such commission shall be sworn, by any official of this State authorized by the laws of this State to administer an oath, well and truly to execute said commission to the best of their skill and ability, which oath shall be returned with their verdict." The legislature in 1915 amended that section by inserting in the 7th line thereof, between the words "State" and "shall," the following: "or where such notice is waived in writing by such relatives, and affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury, and where the truth of such affidavit has been verified in writing by a practicing physician appointed by the ordinary to examine such person." The Civil Code, § 3101, provides that "When there is no guardian for an insane person, or the guardian, on notice, refuses or fails to confine his ward, and any person shall make oath that such insane person, for public safety or other good and sufficient reason, should not longer be left at large, the ordinary, or, in his absence from the county or when he is unable to act for any cause, the judge of the superior court before whom said oath is made, shall issue a warrant as in criminal cases for the arrest of such insane person, to bring him before him on a day specified; and said ordinary, or, in his absence from the county or when he is unable to act for any

cause, the judge of the superior court, on an investigation of the facts, may commit such insane person to the Georgia State Sanitarium, and, if necessary, cause him to be temporarily committed to jail until he can be removed to the sanitarium; and the expense of such confinement and the proceedings shall be paid out of the estate of such insane person, if any, and if none, out of the county funds." In 1918 the legislature passed an act (Acts 1918, p. 162), entitled "An act to revise the laws of the State of Georgia with reference to commitments to the Georgia State Sanitarium, providing a method of transportation to the sanitarium and for caring for and keeping patients while committed therein, setting forth the persons eligible to be committed to the State Sanitarium, and payment of reasonable sums for board and keep of inmates whose estates are sufficient to provide for them, and specifying certain classes of persons who shall be excluded therefrom, and for other purposes." Section 1 of that act provides: "Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within the State, or where such notice is waived in writing by such relative, an affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury, and where the truth of such affidavit has been verified in writing by a practicing physician appointed by the ordinary to examine such person, shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing, said physicians to be residents of the county, if that number reside therein, and the county attorney or solicitor of any city court located in said county, and, if no county attorney or solicitor of said city court, the solicitor-general of the circuit, or some attorney of the county appointed by him, requiring them to examine by inspecting the person for whom guardianship or commitment to the sanitarium is sought, and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in such returns under which such classes they find

said person to come. Such commission shall be sworn, by any officer of this State authorized by the laws of this State to administer an oath, well and truly to execute such commission to the best of their skill and ability, which oath shall be returned with their verdict. No guardian shall be appointed for the estate of such person, nor shall such persons be committed to the sanitarium, without the unanimous verdict of such commission." The succeeding sections of the act provide for the expenses of the proceedings, what persons shall be admitted to the sanitarium, what extra comforts shall be provided the inmates in certain cases, and what disposition shall be made of certain funds of the inmate. There is also a section repealing all conflicting laws.

It will be observed that the act of 1918 does not expressly repeal sections 3092 and 3101 of the Civil Code of 1910. It will also be observed, by comparing the act of 1918 with the Civil Code of 1910, § 3101, that the act of 1918 provides that where "affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury," etc.; and the language of § 3101 of the Civil Code is that when "any person shall make oath that such insane person, for public safety or other good and sufficient reason, should not longer be left at large, the ordinary," etc. So there is no real conflict between the act and the section of the code referred to, as to the class of persons who are to be examined, etc.; and therefore it can not be said that there is such a conflict that the act of 1918 repeals section 3101 by necessary implication. As to the difference in the tribunals which are to examine the subject, it is sufficient to say that § 3092 of the Civil Code and the act of 1918 provide for a different class of subjects than those pointed out in § 3101. This distinction is clearly brought out in the case of *Reagin* v. *Powell,* 125 *Ga.* 89 (53 S. E. 580), and the ruling in that case on this point is applicable to the present case.

In deciding the present case the learned trial judge wrote an opinion which so clearly states the issues and decides the question involved that we adopt a portion of his opinion which is as follows: "This petition was demurred to upon the grounds that it set out no ground authorizing the writ of habeas corpus, or entitling the applicant to her liberty. In addition to the facts alleged in the petition, the contention is therein made that the warrant last

issued for the arrest of the petitioner was without authority of law; that the right of appeal was thereby denied her; that the section 3101 of the Code was repealed by the act of 1918, page 162; that even if this section was not repealed, that the making of a second affidavit under its provision by the applicant for the commission de lunatico and authorizing the arrest thereunder was null and void. The case was heard upon the legal propositions involved in the demurrer and the petition. I think that unless code section 3101 was repealed by a subsequent act of the legislature, the ordinary still has the right and duty, upon the filing of an affidavit that one is a lunatic and dangerous to be at large, to issue a warrant, and have such alleged lunatic brought before him for investigation. I do not think that the provision of this section was repealed by the act of 1918. The act of 1918 copies the language of the act of 1915, page 20, which last-mentioned act uses the identical language relied upon by plaintiff's attorneys as repealing section 3101. The act of 1915 is expressly, as indicated by the caption, 'an act to amend section 3092,' by inserting the amending language. The caption, therefore, can only refer to that section (3092) as the one section of the code referred to. 'No law shall pass which contains matter different from what is expressed in the caption thereof.' State constitution art. 3, sec. 7, par. 8. Section 3101, which is still in force, clothes the ordinary with the power and the duty, when called upon, to pass on the question whether an alleged lunatic should be confined for the public safety. . . Pending an appeal from the judgment committing one to the sanitarium, it is clear that the provisions of section 3101 may be enforced in the interest of public safety. Nor does this invalidate the appeal. If, on the appeal, a jury should find that the subject is not insane, a new question may arise as to whether the subject may be proceeded against as being sui juris and responsible to the law for threatened or actual breach of the peace. The criticism that the law and the proceedings are harsh may be true. The abuse of the power to confine a person alleged to be insane would be outrageous; but it is clear that the legislature considered it necessary that the power should be somewhere exercised, and wisely lodged this power in the court of ordinary, which is our probate court, charged with looking after the interests of lunatics, minors, and other persons requiring supervisory care.

The public safety is of prime importance, and so regarded by law. This is true even though errors are possible in the . courts constituted to afford protection to the public safety."

From the foregoing the court did not err in sustaining the demurrer and in dismissing the petition praying for habeas corpus.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause.*