## JACKSON *et al. v.* HARRIS, guardian.

1. Under the provisions of section 3092 of the Civil Code of 1910, the
   ordinary is not authorized to issue a commission de lunatico inquirendo
   until "ten days' notice of such application has been given to the three
   nearest adult relatives of such person," unless there is no such relative
   within this State.
2. Where such an application was issued and served on September 3,
   the hearing thereon could not lawfully be had until September 14.
   Excluding either the first or last day, as required by section 4, para-
   graph 8, of the Civil Code, ten days did not elapse between September
   3 and September 13. Consequently the judgment appointing a guardian
   for the alleged imbecile on September 13 was void.
3. In view of the foregoing ruling a sale of the property of the alleged
   imbecile by her alleged guardian was unauthorized, and the court
   erred in refusing to enjoin such sale.

                    No. 6005.    FEBRUARY 17, 1928.

Petition for injunction. Before Judge Pittman. Murray su-
perior court. April 4, 1927.

*D. W. Mitchell,* for plaintiffs.   *H. H. Anderson,* for defendant.

RUSSELL, C. J.   Blanche Jackson and others filed a petition to
enjoin J. F. Harris, as guardian of Avie Cowan, an alleged imbecile,
from proceeding with the sale of the real estate of his ward, alleg-
ing that they were the nearest of kin of Avie Cowan, and that the
judgment appointing Harris guardian was void. The judge of the
superior court granted a temporary restraining order. The hear-
ing was had upon the sworn petition and its annexed exhibits, and

---

Insane Persons, 32 C. J. p. 637, n. 36; p. 715, n. 99.

the sworn answer of the defendant. The judge refused to grant an injunction, but granted a supersedeas, "allowing petitioners to carry the case to Supreme Court." As admitted by both parties in argument, the only question presented by the record is whether the judgment of the ordinary appointing a guardian for Avie Cowan was void. Of course, if void it is subject to attack, and the sale of the unfortunate woman's property should not be permitted. By the provisions of section 3092 of the Civil Code of 1910 (section 2573 of the Code of 1895, and section 1855 of the Code of 1873): "Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within this State, shall issue a commission directed to any eighteen discreet and proper persons, one of whom shall be a physician, requiring any twelve of them, including the physician, to examine by inspection the person for whom guardianship (or commitment to the sanitarium) is sought; provided that in all lunacy cases the legal number of jurors shall be six, one of whom shall be a physician, unless twelve are demanded by the party being tried, or by some one of his relatives or friends; and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying in such return under which of such classes they find said person to come. Such commission shall be sworn, by any officer of this State authorized by the laws of this State to administer an oath, well and truly to execute said commission to the best of their skill and ability, which oath shall be returned with their verdict."

In 1918 (Ga. L. 1918, p. 162) the General Assembly passed "an act to revise the laws of the State of Georgia with reference to commitments to the Georgia State Sanitarium, providing for a method of transportation to the Sanitarium and for caring for and keeping patients while committed therein, setting forth the persons eligible to be committed to the State Sanitarium, and payment of reasonable sums for board and keep of inmates whose estates are sufficient to provide for them, and specifying certain

classes of persons who shall be excluded therefrom, and for other purposes." Section 1 of the act is as follows: "Examination of capacity to manage his estate—Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Georgia State Sanitarium), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within the State, or where such notice is waived in writing by such relative, and affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury, and where the truth of such affidavit has been verified in writing by a practicing physician appointed by the ordinary to examine such person, shall issue a commission directed to three reputable persons, two of whom shall be practicing medical physicians in good standing, said physicians to be residents of the county, if that number reside therein, and the county attorney or solicitor of any city court located in said county, and if no county attorney or solicitor of said city court, the solicitor-general of the circuit or some attorney of the county appointed by him, requiring them to examine by inspecting the person for whom guardianship or commitment to the sanitarium is sought, and to hear and examine witnesses on oath, if necessary, as to his condition and capacity to manage his estate, and to make return of such examination and inquiry to the said ordinary, specifying such returns under which such classes they find said person to come. Such commission shall be sworn, by any officer of this State authorized by the laws of this State to administer an oath, well and truly to execute such commission to the best of their skill and ability, which oath shall be returned with their verdict. No guardian shall be appointed for the estate of such person, nor shall such persons be committed to the sanitarium, without the unanimous verdict of such commission." In section 3 of this act it is "provided, however, that no paralytics, epileptics, imbeciles, idiots, drug or alcoholic addicts, persons suffering from tubercular, venereal, or other contagious diseases, whether paupers or not, who are harmless and inoffensive in spirit, and who, if unconfined, would reasonably involve no danger to the life or limb to those with whom they would be associated, shall be committed or admitted to said sanitarium."

As said in *Dickson* v. *Hicks,* 160 *Ga.* 487, 492 (128 S. E. 770), "It will be observed that the act of 1918 does not expressly repeal sections 3092 and 3101 of the Civil Code of 1910. It will also be observed, by comparing the act of 1918 with the Civil Code of 1910, § 3101, that the act of 1918 provides that where ' affidavit is made by any one of such relatives, or other person, that such person is violently insane and is likely to do himself bodily injury,' etc.; and the language of § 3101 of the Civil Code is that when ' any person shall make oath that such insane person, for public safety or other good and sufficient reason, should not longer be left at large, the ordinary,' etc. So there is no real conflict between the act and the section of the code referred to, as to the class of persons who are to be examined, etc.; and therefore it can not be said that there is such a conflict that the act of 1918 repeals section 3101 by necessary implication." In view of the ruling in that case, and the fact that with the addition of the amendment to section 3092 which was passed by the General Assembly in 1915 (Ga. L. 1915, p. 20) the provisions of section 3092 are unchanged, as to the method of procedure to be pursued, from that provided by section 1855 of the Code of 1873, and similar provisions in the Codes of 1882 and 1895, which have been the subject of adjudication by this court, the question as to whether the judgment of the court of ordinary adjudging Avie Cowan to be insane is void is to be determined by the record of the proceedings before that tribunal. *Morton* v. *Sims,* 64 *Ga.* 298. As said by Judge Bleckley in the *Morton* case, "In ruling upon the motion to set aside the judgment appointing a guardian for Dr. Sims, the question is whether upon the face of that judgment, reading it in connection with the balance of the record to which it belongs, enough appears to show that it was duly rendered. The trial is to be by inspection, and consists only in comparing the judgment and its preliminaries with the law."

Judge Bleckley then quotes section 1855 of the Code of 1873, in which the preliminaries leading up to the inspection and trial are the same as in the act of 1918, and says: "There is to be a petition on oath, with proof of ten days notice of the application to three of the nearest adult relatives, or proof that no adult relative of the alleged imbecile is within this State. . . The scheme of the statute is to serve notice upon three, if that many are here,

and if there be less than that many, upon two or one, as the case may be. If none is here, then, according to the letter of the statute, the ordinary may proceed upon proof of that fact; but we think, as matter of practice, and to comply with the spirit of the statute as well as the general law, it would be better for the ordinary to require the notice to be given to the alleged imbecile himself, or else designate by order a guardian ad litem to receive notice for him. . . Nothing is more certain than that there was a failure to comply with the statute in respect to the important step of notice, and for that defect in the proceedings the judgment appointing the guardian was properly set aside. . . The misstep was in issuing the commission, without requiring the petitioners to comply with the law as to notice. The object of notice is that there may be due warning to make objection for legal cause to the commission or any of the commissioners, as well as to prepare for adducing evidence on the main question. The notice is to precede by ten days the issuing of the commission. Why is this, if not for both of the purposes which we have specified? There was too much haste. The commission issued one day, was executed the next, and the judgment appointing the guardian followed immediately. Action, trial, and judgment in two days, and no previous notice! The surprise and shock of such swift inquisition into an old gentleman's wits might so confound him as to prepare him for consenting, through his counsel, to being adjudged an imbecile." So the court in rendering its judgment, ruled: "In issuing a commission to examine a person alleged to be imbecile from old age or other cause, and incompetent to manage his estate, and in appointing a guardian for such imbecile person on the report of the commissioners, the ordinary exercises a special and limited jurisdiction. The proceedings are summary, and must be construed strictly. They should show on their face such facts, especially touching the giving of notice, as will authorize the judgment appointing a guardian."

In this case it appears upon the face of the petition and affidavit seeking the appointment of a commission that the notice was given to the petitioners in this case, Mrs. Edgar Jackson, Mrs. Blanche Jackson, and Mrs. Grace Jackson Gay, the nearest of kin of the alleged imbecile, on September 3, 1926, though it also appears that the affidavit of the physician mentioned in the statute as a requisite

to complete the proceeding was not made until September 4, and it does not appear that this portion of the notice was ever served upon the nearest of kin. It further appears that the commission was issued on September 4, 1926, directing E. H. Dickie, M. D., J. E. Bradford, M. D., and C. C. King, attorney, to examine Avie Cowan. It appears from the petition that service of the notice was had at three o'clock p. m. on September 3, and the appointment of the guardian was made at ten o'clock a. m. on September 13. Whether we take the law from section 3092 of the Code or from section 1 of the act of 1918, it is very plain that the next of kin did not have ten days service of the notice. Paragraph 8 of section 4 of the Code provides that in such instances as this either the first or the last day shall be excluded. The hour in the day on which the notice was served and on which the commission issued is perhaps immaterial. If it were material, only a little over nine days notice was given to the nearest of kin, even if the rule laid down in section 4 of the code is not observed. However, the law does not generally take notice of ·fractions of days; and, excluding the first day, the next of kin were entitled to ten days notice, not nine days and a fraction, the end aimed at by this grant of time being pointed out as hereinbefore referred to by Judge Bleckley. In this case, unless both the first and last days are counted, the ten days notice was not given. Excluding the first day, only ten days elapsed before the rendition of the judgment—September 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13. All of these ten were by law allotted to preparation for making objec·tions and other purposes mentioned by Judge Bleckley. Consequently no judgment could have been lawfully rendered prior to September 14. Furthermore, it appears ·from the original proceedings in the court of ordinary that the commission issued the next day after the application for guardianship was made, when the language of the law is that the commission shall issue only "upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person," etc. Judge Bleckley sets forth in forcible language the reasons why the requirements of the law in the case of insane persons shall be strictly construed, and we have quoted his ruling upon the premature issuance of commissions when the law was the same as to the method or preliminary procedure as it is at present, whether the act of 1918 repeals section 3092 or not.

The trial judge seems to have construed the ten days notice to be given as a mere requirement that notice shall be given within ten days; but, as pointed out in *Rusk* v. *Hill*, 117 *Ga.* 722 (45 S. E. 42), to require that a thing be done within ten days is not the same thing as forbidding a thing to be done until after the expiration of ten days. In that case this court held: "In computing the ten days within which a bill of exceptions should be served, the Political Code, § 4, par. 8, to the effect that the first or last day should be excluded, is applicable. It follows that where a bill of exceptions is certified on the 10th day of the month and is served on the 20th day of the same month, such service is within the ten days prescribed." It naturally follows that with notice served on the 3d day of the month the 13th day of the month is within ten days, and not after the *expiration* of ten days, as we construe the language of the law in accordance with the views expressed by Judge Bleckley. Both for the reason that the next of kin did not have ten days within which to make preparation should they have desired to oppose the grant of the guardianship, and because the commission, as in the *Morton* case, issued one day after the application for guardianship was filed, when the law requires that it shall not issue until there has been proof of ten days notice of the application, the judgment appointing the defendant in error guardian was void, and the court erred in refusing an injunction.

*Judgment reversed. All the Justices concur.*