OWENBY *et al. v.* STANCIL *et al.*

No. 13002.   MARCH 29, 1940.

54

*P. Q. Bryan* and *Clifford E. Hay,* for plaintiffs.

*Hugh R. Aderhold, Franklin & Eberhardt,* and *Omer W. Franklin Jr.,* for defendants.

REID, Chief Justice. (After stating the foregoing facts.)

It has been necessary to state the petition with some full-

ness, to make plain the point in the case and the nature of our decision. The defendants won in the court below on the theory that the action was such an equitable action as that it could be brought only in Cherokee County, under the provisions of the constitution, art. 6, sec. 16, par. 3 (Code, § 2-4303), that "Equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed." The contention of the plaintiff is that it is a case respecting title to land, and therefore was properly brought in Colquitt County where the land lies, under the provision of the constitution, art. 6, sec. 16, par. 2 (Code, § 2-4302), that "Cases respecting titles to land shall be tried in the county where the land lies.".

"Our law makes a distinction between suits to establish the title to land or to establish the evidence of title, and suits to recover the land upon legal title; the former being suits in equity and the latter actions at law." Powell on Actions for Land, § 150. The "cases respecting titles to land" referred to in art. 6, sec. 16, par. 2, of the constitution (Code, § 2-4302) are actions at law, such as ejectment and statutory substitutes, in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant, for recovery of land or recovery of the land and mesne profits. The test stated in *Frazier* v. *Broyles,* 145 *Ga.* 642, 646 (89 S. E. 743), is the one commonly used: "One test as to whether a suit to recover land is one of ejectment simply, and is a case 'respecting title to land,' is whether the plaintiff can recover on his title alone, or whether he must ask the aid of a court of equity in order to recover." The plaintiffs say, not only in their argument but also in the petition itself, that they are suing to recover the land and mesne profits, and are asking equitable relief, not as to the establishment of their title, which is a legal title, without need for any resort to equity, but for the protection of their recovery of mesne profits.

The foundation of the plaintiff's right to recover the land is found in her allegations that her husband, J. W. Owenby, died intestate in March, 1938, a resident of Colquitt County, as the owner thereof, and that it was duly set apart to her as a year's support under the Code, § 113-1002 et seq. Had the plaintiff stopped here, she would have shown a presently enforceable legal title against the possession of the defendant, for recovery of the land,

and under the principles already stated her action would have been on its face one respecting title to land, and as such, under the constitution, properly instituted in Colquitt County where the land is situate. This she did not do; but, anticipating the defendant's defense, she alleged that, on the representation of the defendant Stancil that Owenby was an imbecile and incapable of managing his estate, the ordinary of Cherokee County in March, 1937, appointed the defendant Lacy as his guardian under the Code, § 49-604; that, acting under the authority of § 49-316, which provides, in substance, that upon the death intestate of a person under guardianship, the guardian becomes the administrator of his ward's estate by operation of law, Lacy proceeded to administer the estate of Owenby, and as his administrator sold the property to the defendant Stancil. If the judgment of the court of ordinary of Cherokee County, appointing a guardian for Owenby, is void and may be so dealt with in the proceeding to recover the land, instituted in the superior court of Colquitt County, it would follow that the deed would be void, and the plaintiff would show a present enforceable legal title to the property. If, on the other hand, the judgment must be treated as valid in such a proceeding, her action must fail. She alleged that the proceedings for the appointment of a guardian for Owenby and the judgment rendered thereon were void, for the various reasons set out in the statement of facts.

In *Morton* v. *Sims*, 64 *Ga.* 298, it was said in substance that a judgment appointing a guardian under the Code, § 49-604, is one rendered by the ordinary, and not the court of ordinary (the latter being a court of general jurisdiction in "the appointment and removal of guardians of minors and persons of unsound mind" (§ 24-1901(5))), and that the proceedings should show on their face jurisdictional facts, especially as to the notice to the relatives. Two of the attacks made on the judgment are in substance: (1) that it does not appear that any affidavit was made by one of his relatives that he was violently insane or liable to do himself bodily injury, or that a practicing physician made such an affidavit; and (2) that it does not appear that any service of the application was made on Mr. Owenby, or that any guardian ad litem was appointed for him. The answer to the first attack is that such an affidavit is required, in proceedings for the appointment of a guardian under the statute, only where the ten-days notice to the three nearest relatives is

waived; that is, where consent is given that the commission for the examination of the alleged lunatic may issue before expiration of ten days from the notice. In *Yeomans* v. *Williams,* 117 *Ga.* 800 (45 S. E. 73), this court held that the relatives could not confer jurisdiction by waiving the ten-days notice, saying that "notice and lapse of time are both jurisdictional facts." In *Allen* v. *Barnwell,* 120 *Ga.* 537 (48 S. E. 176), where, as in this case, the proceedings all took place in one day, the court held the proceedings to be a nullity, and allowed them to be subjected to collateral attack in a habeas-corpus case. The court said, speaking through Mr. Justice Lamar, "On principles fundamental and universal, a judgment without notice is void, and in every case there must at least be the notice required by the statute." The court began its opinion in that case with the statement that "The delay involved in the necessity of giving ten-days notice before being able to obtain an order of commitment for one who is violent and insane, may occasion inconvenience or even danger," and suggested that the situation address itself to the General Assembly. The General Assembly thereafter (Ga. L. 1915, p. 20) amended the statute into the form in which it now appears in the Code; so that in the case of a person violently insane or likely to do bodily harm to himself there might be a waiver of notice, upon the establishment of the facts. Under the statute as it now exists, ten-days notice of the application for the appointment of a guardian thereunder must ·be given to the three nearest relatives of the person for whom·a guardian is sought; and the ten-days notice can·not be waived, except where an affidavit is made "that such person is violently insane and is likely to do himself bodily injury," and the truth of such affidavit is verified by a physician. Where the ten-days notice is given, no such affidavit is necessary.

Nor does the statute require any service of the application to be made on the alleged lunatic by the sheriff or other officer, or that a guardian ad litem be appointed. The notice contemplated by the statute is, as was pointed out in *Georgia Railroad Bank &c. Co.* v. *Liberty Bank &c. Co.,* 180 *Ga.* 4 (177 S. E. 803), the examination by inspection of the alleged lunatic by the commission appointed by the ordinary. In that case the court held that the act did not violate the due-process clause of the State or Federal constitution on the alleged ground that it failed to provide for any notice to the

person alleged to be insane. The court said, in substance, that although the statute did not provide for service of the application upon the person to be examined, its mandatory provision requiring the commission appointed by the ordinary to examine such person by inspection was sufficient notice to him to meet the requirements of due process. The language of the court in *Morton* v. *Sims,* supra, was declared to be obiter dictum.

It is further alleged that the "commission made their . . report without having gone in a body to see and examine the said J. M. Owenby, and without having made any examination of said J. M. Owenby while assembled as a commission, in his presence." This provision is mandatory, and unless complied with the ordinary is without jurisdiction to appoint a guardian. *Singer* v. *Middleton,* 135 *Ga.* 825 (70 S. E. 662). The above allegation is not to the effect that the record of the proceedings wherein a guardian was appointed for Mr. Owenby does not disclose a compliance with this requirement, but is merely a charge that there was in fact no such compliance. If, under the decision in the *Morton* case, supra, this fact should appear on the face of the record (and we need not so decide), we must assume, in the state of the present record, that the record of the proceedings had before the ordinary is in proper form. This being true, the above allegation must be taken as an effort by aliunde evidence to impeach the record. The same observation may be made as to the allegation that Mr. Owenby was not a resident of Cherokee, but of Colquitt County. It is affirmatively alleged that the record shows an acknowledgment of service of notice of the proceedings by the three nearest relatives of Mr. Owenby living in this State, including the plaintiff. The plaintiff seeks also to impeach the record in this respect by showing that no such notice was given, and that the acknowledgment by Mrs. Owenby was a forgery.

While it is provided in the Code, § 110-709, that "The judgment of a court having no jurisdiction of the person or subject-matter, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it," and again, in § 110-701, that "A void judgment may be attacked in any court and by any person," these sections have generally been construed to refer to judgments void on their face, it being the general and almost universally accepted rule that a

domestic judgment can not be called into question in a collateral proceeding, except for defects apparent on the face of the record, such as would render the proceedings void. *Thomas* v. *Lambert,* 187 *Ga.* 616 (1 S. E. 2d, 443) ; *Edwards* v. *Ashley,* 136 *Ga.* 144 (70 S. E. 1101) ; *Schulze* v. *Schulze,* 149 *Ga.* 532 (101 S. E. 183) ; *Kimball* v. *Kimball,* 160 *Ga.* 136 (127 S. E. 411) ; *Sheppard* v. *Whitfield,* 50 *Ga.* 311; *Wash* v. *Dickson,* 147 *Ga.* 540 (94 S. E. 1009) ; *Jones* v. *Smith,* 120 *Ga.* 642 (48 S. E. 134) ; *Maybin* v. *Knighton,* 67 *Ga.* 103; *Heath* v. *Miller,* 117 *Ga.* 854 (44 S. E. 13) ; *Dixon* v. *Baxter,* 106 *Ga.* 180 (32 S. E. 24) ; *Payne* v. *McCrary,* 187 *Ga.* 573 (1 S. E. 2d, 742) ; *Medlin* v. *Downing Lumber Co.,* 128 *Ga.* 115 (57 S. E. 232) ; *Bowen* v. *Gaskins,* 144 *Ga.* 1 (85 S. E. 1007) ; *Ketterer* v. *Stringfield,* 142 *Ga.* 441 (83 S. E. 116). In 15 R. C. L. 893, it is said: "According to the common-law rule, adhered to at the present time in most of the States, the presumption in favor of the jurisdiction of a court of general jurisdiction is conclusive, and its judgment can not be collaterally attacked where no want of jurisdiction is apparent of record. Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So, where the judgment contains recitals as to the jurisdictional facts, these are deemed to import absolute verity unless contradicted by other portions of the record. Consequently such a judgment can not be collaterally attacked in courts of the same State by showing facts aliunde the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it. The validity of a judgment when collaterally attacked must be tried by an inspection of the judgment roll alone, and no other or further evidence on the subject is admissible, not even evidence that no notice had been given." See also 1 Freeman on Judgments (5th ed.), § 375 et seq. Applying the above rule, it has been held that a judgment granting letters of administration valid on its face can not be collaterally questioned on the ground that the deceased was not a resident of the county. *Jones* v. *Smith,* supra. Or on the ground that the person to whom letters were granted was not of the class entitled thereto. *Wash* v. *Dickson,* supra. It has been ruled that a judgment of divorce could not be collaterally questioned on the ground that the defendant was a resident of a county in the

State other than that in which it was obtained (*Kimball* v. *Kimball,* supra), or that the plaintiff therein was a resident of another county (*Schulze* v. *Schulze,* supra). It has also been held that a widow could not collaterally attack a judgment setting apart to her a year's support, on the ground that she did not apply for it. *Allen* v. *Lindsey,* 113 *Ga.* 521, 523 (38 S. E. 975).

It is true that this court, in *Johnson* v. *Wright,* 27 *Ga.* 555, apparently permitted a collateral attack on a judgment, although the rule prohibiting such attack except where the judgment is void on its face was not alluded to or discussed. As already pointed out, this court has many times since that decision adhered to the general rule, and the court is now of the opinion that any other and contrary rule would be inimical to orderly processes and the sanctity of judgments, and that that decision in so far as it may be construed to hold to the contrary should be and is upon request made therefor overruled. It is true also that this court has in many cases held that a court of equity may set aside a judgment of the court of ordinary for fraud and for defects in such judgments as are alleged by the plaintiff to exist in the judgment in question. Without deciding when and under what circumstances a court of equity may entertain an attack upon a judgment of a court of competent jurisdiction either collaterally or in a direct proceeding for such purpose, see generally, but not exhaustively, Code, § 110-710; *Johnson* v. *Peoples Bank,* 173 *Ga.* 250 (160 S. E. 235); *Pass* v. *Pass,* 98 *Ga.* 791 (25 S. E. 752); *Griffin* v. *Skeloe,* 30 *Ga.* 300; *Williams* v. *Lancaster,* 113 *Ga.* 1020 (39 S. E. 471); *Wimberly* v. *Mansfield,* 70 *Ga.* 783; *Smith* v. *Cuyler,* 78 *Ga.* 654 (3 S. E. 406); *Alabama Great Southern R. Co.,* v. *Hill,* 139 *Ga.* 224 (76 S. E. 1001, 43 L. R. A. (N. S.) 236, Ann. Cas. 1914D, 996); *Jordan* v. *Callaway,* 138 *Ga.* 209 (75 S. E. 101); *Rodgers* v. *McCune,* 143 *Ga.* 657 (85 S. E. 837); *Powell* v. *Harrison,* 180 *Ga.* 197 (178 S. E. 745); *Blackwell* v. *Parks,* 166 *Ga.* 631 (144 S. E. 24); *Young* v. *Young,* 188 *Ga.* 29, 33 (2 S. E. 2d, 622). No such equitable powers can be invoked in the present case, since the specific objection is made that none of the defendants against whom substantial equitable relief is prayed are residents of Colquitt County. Neither Lacy, the guardian and administrator, nor Stancil, the purchaser of the property, is a resident of Colquitt County. Since the superior court of Colquitt County, in the exercise of its purely legal powers, must give effect to

the judgment, and can not receive proof of its invalidity under the rule already discussed, the petition must be construed as one seeking to invoke the power of the court as a court of equity to annul the judgment; and since none of the defendants against whom substantial equitable relief in this respect is sought are residents of the county, the judge properly dismissed the action.

■ The point that the record of the proceedings in the appointment of a guardian shows on its face a failure to comply with the jurisdictional requirement of ten-days notice to the three nearest adult relatives is without merit. It is admitted that the record contains a notice dated March 15, 1937, which was fourteen days before the hearing, on which appears an acknowledgment of service purporting to have been signed on March 17, 1937, by the wife and children of the alleged incompetent. It is contended that the application was not actually filed until March 29, the day that the guardian was appointed, and that the notice given before the filing of the application was not a compliance with the statute. We do not deem the point well taken. The statute does not require that the application must actually be filed before the notice of the filing of it can be given. The pertinent language of the statute is: "Upon the petition of any person on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Milledgeville State Hospital), and upon proof that ten-days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within the State, or where such notice is waived in writing by such relatives, and affidavit is made by any one of such relatives or other person that such person is violently insane and is likely to do himself bodily injury, and where the truth of such affidavit has been verified in writing by a practicing physician appointed by the ordinary to examine such person, the ordinary shall issue a commission," etc. Under the terms of this statute the giving of the notice of the time the ordinary is to issue the commission is sufficient if given either before or after the application is filed, provided the statutory ten-days notice expires before the commission issues. The fact that the notice set out in this record stated that an application had been filed, when the record shows that it had not in fact been filed, is immaterial under the above view, since the notice also gave the date the ordinary was to issue the commission.

*Judgment affirmed. All the Justices concur.*