## DAVIS *v.* FREDERICK *et al.*

1. The court did not err in instructing the jury that if the party offering the will for probate proves its execution, proves that the testator was apparently of sound mind and that the will or paper was freely and voluntarily executed, then the petitioner has carried the burden of proof to that extent, and the burden is then cast upon the caveators to meet that prima facie case. This charge was not erroneous because of the limiting expression " to that extent," and the other expression " to meet that prima facie case." The first of these expressions did not enlarge

the burden upon the propounder, and the last-quoted expression did not lessen the burden upon the caveators.

2. The court in his charge stated the following as a test of testamentary capacity: that a man shall have a decided and rational desire as to the disposition of his property, must know the nature of a will, that is, that it is the expression of a man's wishes as to the disposition of his property to take effect after his death; that he must have memory enough to remember generally the property to be disposed of by his will, and to call to mind those who are related to him by ties either of blood or affection, and must be able to conceive and express an intelligible plan for the disposition of his property. *Held*, that the charge set forth substantially the correct test of testamentary capacity.

3. One clause of the will was conceded by counsel for the propounder to be void and of no legal effect, and it would have been appropriate for the court to give the jury instructions upon the subject of the effect of this upon the will; but his failure to do so, in the absence of a written request, is not ground for the grant of a new trial.

4. The statement of the court to the jury that the jury was as well qualified to pass upon the case as any other jury would be, that they had already spent quite a number of hours in investigation and consideration of the case, that the court could not hope to get a jury from the county who would give the case a more careful and painstaking consideration, that he would ask them to retire to their room and make every effort to arrive at a verdict in the case, that he did not wish to overwork them, that he would send any message to their home that they might wish, that he would try to take care of them to the best of his ability, but that it was his duty to give them every opportunity to arrive at a verdict in the case, was not improper under the circumstances, though the jury had been out for several hours deliberating, and it was at a late hour Saturday night. It was not an improper expression of opinion by the court to the jury that the jury should be able from the evidence in the case to return a verdict, and it did not amount to coercion.

5. The court did not err in charging the jury as follows: "In arriving at a solution of the question, you, of course, consider all the facts; you can take into consideration the reasonableness or unreasonableness of the disposition, which is set out in that paper, of the property offered for probate."

6. The court also instructed the jury as follows: "You take into consideration the relation of the legatees of John W. Johnson, the circumstances under which he was situated at the time he made the will, his surroundings, his physical condition, his mental condition, his habit, his friendship; consider all the facts and circumstances in order to arrive at a solution of one of the crucial questions in the case,— was John W. Johnson of sufficient mental capacity to make a will?" This charge was not error upon the ground that it contained or intimated an opinion as to what had or had not been proved, nor because there was no pleading on which to base the charge as to undue influence.

7. The evidence in the case upon the subject of undue influence was sufficient to authorize the court's instructions upon that subject, and to support the finding of the jury.

No. 3393. JUNE 13, 1923.

Appeal.  Before Judge Malcolm D. Jones.  Houston superior court.  August 5, 1922.

John Wilson Johnson, a resident of Houston County, Georgia, died in August, 1921, leaving a will, made about a month before his death, naming Edwin S. Davis as executor.  The executor probated the will in common form, and then offered it for probate in solemn form.  W. P. Frederick et al., first cousins and next of kin to the deceased, filed a caveat on the ground of mental incapacity, and what was claimed to be a charge of undue influence.  The grounds of the caveat were, that at the time of the execution of the will the testator was wanting in testamentary capacity; that he was not of sound mind and disposing memory; that the will was not freely and voluntarily executed by the testator, " but was the result of the fraudulent practices upon him by Edwin S. Davis, who drafted the will;" that Mrs. Cora Wilson and Davis, who was named as executor, and who were large beneficiaries under the will, were not related to the testator; that Mrs. Wilson, at a time when the testator was incapable of transacting any business whatever, when he was in fact insane, directed and commanded the testator to make the alleged will; and that Davis, knowing that Johnson was incapable of making a will, prepared the will and had the testator to sign the same, and did procure the signature of the testator to the will through fraudulent practices and through duress.  The caveat was tried before the ordinary of Houston County, who found for the will.  An appeal to the superior court resulted in a verdict and judgment against the will.  The propounder moved for a new trial on various grounds; the motion was overruled, and the case is before this court on exceptions to that ruling.

*Jones, Park & Johnston,* for plaintiff in error.

*Oliver C. Hancock,* contra.

BECK, P. J.  (After stating the foregoing facts.)

1.  The first ground of the amendment to the motion for a new trial assigns error upon the following charge of the court: " The burden of proof in the case is primarily with Edwin S. Davis, who offers the will for probate.  If the party offering the will for probate proves its execution, proves that John W. Johnson was apparently of sound mind, proves that the will was, or paper was, freely and voluntarily executed, then the petitioner has

carried the burden of proof to that extent, and the burden is cast upon the caveators to meet that prima facie case." The charge is criticized upon various grounds specifically set forth; but upon a reading of the charge and considering the subject dealt with, it is manifest that there was no material error in the part of the charge here excepted to. In the case of *Oxford* v. *Oxford,* 136 *Ga.* 589 (71 S. E. 883), it was said: "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator." Similar rulings and dicta can be found in numerous decisions. See Redfearn on Wills and Administration of Estates, 217, notes to § 122. The limiting or qualifying expression "to that extent," employed in this excerpt from the charge, is excepted to and criticised on the ground that it "implied to the jury that proof that the testator was apparently of sound mind, proof of the execution of the paper, and proof that it was freely and voluntarily executed, was not all that the propounder was required to submit in order to carry the burden imposed upon him by law." The expression, "to that extent," might well have been omitted, but we do not think that it had the force and effect attributed to it by movant. The court merely suggested the essential issues as to which the burden at first rested upon the propounder, and did not state (as there was no contest in regard to these) certain formalities to be observed in the execution of the will, and, after stating the essential issues, charged the jury that if the party offering the will carries the burden as to those essential issues, or, in the words of the charge, "to that extent," then the burden is cast upon the caveators, etc. But at any rate, whether we have properly here ascribed to the expression objected to the meaning which the judge who employed it intended it to have, we do not see how it could have had any injurious effect, in view of the entire charge.

2. In another ground of the motion for a new trial error is assigned upon the following charge of the court: "What the law requires as a test for the making of a will is that a man shall

have a decided and rational desire as to the disposition of his property; or, as it has been expressed in one of the cases, a man must know the nature of a will, that is, that it is the expression of a man's wishes as to the disposition of his property to take effect after the testator's death; he must further have memory enough to remember generally the property to be disposed of by his will; he must further have memory enough to call to mind those who are related to him by ties either of blood or affection, and then, lastly, he must be able to conceive and to express intelligently a plan, or an intelligible plan for the disposition of his property. If a man possesses these qualifications, then he has the capacity to make a will. If he does not possess all of these qualifications, then he does not have the capacity to make a will. Applying that principle to this case, if you find that John W. Johnson had sufficient mental capacity to understand that a will was the expression of his desire as to how his property should be disposed of after he was dead, and that John W. Johnson at the time of the making of his will remembered those who were connected or related to him by ties of blood or affection, if he was able, had memory sufficient to call them into mind, if he desired to do so, and if he had memory sufficient to call to mind generally the property which he desired to dispose of, and he had capacity enough to conceive an intelligible plan for the disposition of his property, why, then he would have sufficient capacity to make a will. If, on the other hand, he did not understand the nature of a will, if his condition was such that he was not able to call to mind those persons who were related to him by ties either of blood or affection, if he did not have sufficient memory to call to mind the property which he desired to dispose of by his will, if he was not able to form a conception of an intelligent plan for the distribution of his property, then he would not have that capacity which the law requires for the making of a will." The test laid down here of testamentary capacity is in accordance with the construction and interpretation that have been made in various decisions rendered by this court of section 3842 of the Civil Code, which relates to the amount of mental capacity necessary to enable one to make a will. See, under the code section referred to, the citation of authorities and the case of *Slaughter* v. *Heath,* 127 *Ga.* 747 (57 S. E. 69, 27 L. R. A. (N. S.) 1). In that case it was said: " A person has

testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." The language in which the rule for testing testamentary capacity has been stated varies, but the rule stated ·in the excerpt which we have quoted from the *Slaughter* case is the usual one, and based upon the construction of the code section last cited. See the discussion of this subject in the first division of the opinion in that case.

3. It was conceded by the propounder in open court on the trial of the case that one clause of the will, to wit, "I direct the executor of this my will and testament to dispose of my other personal property in accordance with instructions that I shall hereafter give him personally," was of no legal force or effect. And movant contends that the failure of the court to instruct the jury that this paragraph of the will was of no legal force or effect whatever and had no legal force or effect as to the disposition of any part of the property of the testator, nor upon any of the remaining portions of the will, was error in that such failure to so charge authorized the jury to find that if such paragraph was inserted without the direction of said John W. Johnson and said paper was signed by the testator without knowledge on his part that it contained this paragraph, the paper offered for probate would not express the will and desire of the testator as to a disposition of his property. In the course of his instructions to the jury the court charged generally that they were· to "determine,          . from a consideration of all the evidence, whether the preponderance of evidence shows that the paper offered for probate is the will or is not the will of John W. ˙Johnson. . . If you find that John W. Johnson had the capacity to make this will, and that it was freely and voluntarily made, that is, there was no restraint upon his liberty of action, then the form of your· verdict would be, ' We, the jury, find that the paper offered for probate is the will of John W. Johnson.' If, on the other hand, you

find he did not have the capacity to make a will, under the rules I have given you, or that his liberty of action was interfered with, and that some one else's wishes or desires were imposed and substituted for his wish or desire, or either of them, then the form of your verdict would be, 'We, the jury, find that the paper offered for probate is not the will of John W. Johnson.' So you will find whether the paper is or is not the will of John W. Johnson." If counsel for the propounder had desired that the court should especially mention that clause of the will conceded to be of no force and should instruct the jury as to the effect of this upon the entire will, they should have made a request to that effect in writing.

4-6. The rulings made in headnotes 4, 5, and 6 require no elaboration.

7. Complaint is made of the following portions of the court's charge: (2) "The issue in this case, as you will see, is made by the contentions of the caveators, that John W. Johnson did not have capacity to make a will, and that the paper was not freely and voluntarily made, or, I believe, as expressed in the caveat, that there was a want of perfect liberty of action." (3) "Now, a man, to make a will, must not only have capacity to make a will, but he must have perfect liberty of action in making that will; that is, there must be no undue influence exercised upon the testator, the man making the will, the expression of a man's desire as to the disposition of his property after his death; and anything that prevents this paper from being the expression of his desire, of John W. Johnson's desire, or that substitutes some one else's will or imposes that upon John W. Johnson, would invalidate the will for the lack of entire freedom on his part." (4) "Undue influence is any influence brought to bear upon the testator, that is, John W. Johnson in this case, which prevents the will from being his own free, voluntary act; anything that substitutes the will or desire of some other person for the will or desire of John W. Johnson." (5) "If you find that John W. Johnson had the capacity to make this will, and that it was freely and voluntarily made, that is, there was no restraint upon his liberty of action, then the form of your verdict would be, 'We, the jury find that the paper offered for probate is the will of John W. Johnson.' If, on the other hand, you find that he did not have

the capacity to make a will, under the rules I have given you, or that his liberty of action was interfered with, and that some one else's wishes or desires were imposed and substituted for his wish or desire, or either of them, then the form of your verdict would be, ' We, the jury, find that the paper offered for probate is not the will of John W. Johnson.' So you will find whether the paper is or is not the will of John W. Johnson." (10) " Now, gentlemen, any one can make a will if they are not laboring under some disability provided by law. That disability provided by law may arise from a want of capacity, or a lack of entire freedom of action in making the will." (13) " If he has perfect control over the statement of his wishes, and the statement of his wishes as expressed in this paper represent the free and voluntary expression of John W. Johnson's desire, then he is not under any undue control; if that expresses the wish or desire of some other person and is not the wish and desire of John W. Johnson, then that would not be such uncontrolled or free and voluntary act as would be a will."

Error is assigned upon these excerpts from the charge in grounds 2, 3, 4, 5, 10, and 13 of the motion for new trial, respectively. The charges quoted laid down with substantial correctness the law upon the subject and issues dealt with there, and it is unnecessary to discuss all of the criticisms upon the portions of the charge last set forth. But there is one exception made to each one of the excerpts from the charge which requires consideration. It is based upon the contention urged by the plaintiff in error that there was no evidence authorizing the charge upon the subject of undue influence. The grounds of the caveat setting up undue influence, tested by the rules of good pleading, do not clearly and distinctly set forth acts of duress upon the part of either of the two chief beneficiaries under the will; but there was manifestly an attempt to plead undue influence. If the vagueness and indefiniteness of this ground of the caveat setting up undue influence had been attacked by special demurrer pointing out its insufficiency in this regard, no doubt the special demurrer would have been sustained in case the caveators had failed or refused to offer appropriate amendments to cure the defects pointed out. But this ground of the caveat was not demurred to specially, and it remained a part of the caveat, and the caveators had the

right to introduce evidence to support that ground of the objection to the probate of the will. The writer of this opinion, after a careful examination of the record, has reached the conclusion that there was no sufficient evidence of undue influence exercised upon the testator to authorize instructions to the jury upon that subject; but the majority of the court are of the opinion that there was evidence, not only authorizing the charge, but sufficient to authorize the verdict of the jury upon that issue. The views of the majority may substantially be stated as follows:

Fraud and undue influence can rarely be established by direct proof. Accordingly, both may be proved by indirect evidence and by proof of facts from which they may be inferred. The presumption is strong against a party preparing a will who takes a benefit under it, and although it will not be declared void on that account, strong evidence of intention in such a case will be required. *Beall* v. *Mann*, 5 *Ga.* 456. The presumption is strong against an act done by the agency of the party to be benefited, especially when the capacity of the testator at the time the will was executed was in any degree doubtful. Under such circumstances, strong proof of intention is required. *Harvey* v. *Anderson*, 12 *Ga.* 69. If a scrivener is a large beneficiary under the will, greater proof will be necessary to show the knowledge of its contents by the testator. Civil Code (1910), § 3850. "When a will is prepared by one who takes a large benefit under it, it can not be set up without strong proof that the testator understood its provisions and assented to them." *Adair* v. *Adair*, 30 *Ga.* 102.

The draftsman of the will took a substantial legacy thereunder. The will disposed of the large estate of the testator, to strangers, including the scrivener, and practically to the exclusion of the blood relatives of the testator. The draftsman of the will was named as executor thereof. It appears from the testimony of the propounder, that confidential relations had long existed between him and testator, that the testator was in the habit of confiding to him intimate, personal matters, that the testator frequently sought his advice in business matters, that the propounder wrote important documents for the testator, and that the two were classmates at college, becoming fast friends. It appears that close personal relations existed between them from that time until the testator's death. The will was executed on July 7, 1921. The

testator died one month later. Testator was stricken with diabetes early in 1921, and was in the last stages thereof when he made his will. He was confined to his bed, with one leg swollen to three times its natural size. He suffered great and constant pain. It was necessary to administer three grains of morphine to him daily to alleviate his pain. About the time the will was prepared Mrs. Stokes visited the testator. The propounder asked her to vacate the room. He was closeted with testator for some time. When the propounder departed, testator told this lady that they were trying to get him to make a will. Shortly before the execution of the will one of the chief legatees thereunder visited testator. He declined to see her on the first visit. She returned the next day, begged to see him, and was permitted to do so. What passed between them is not disclosed by the record. On the day the will was executed, and between the time of its preparation and execution, propounder claims that the testator gave him his own note for $10,000, which testator held against him for money borrowed, and $1500 in liberty bonds. The propounder did not disclose these gifts until after the death of testator. In the will testator bequeathed to propounder the notes of one Ferguson for $2500. There was evidence that at the date of the execution of the will the testator was of unsound mind. Two of the subscribing witnesses did not testify that testator was of sound mind when his will was executed. The draftsman, when preparing the will, asked Ben Robinson, who afterwards attested the will as a witness, to give the boundaries of the property devised under it. At that time the testator did not have anything to say about it. The draftsman did not ask the testator for the boundaries. He made this request of Robinson in the testator's presence. After the will was executed, Robinson, a legatee, told the draftsman that he felt like he had not gotten a square deal, because the principal legatee under the will was no relation of testator, that he had stayed with the Johnson family, had worked, and made part of the property. He helped to pay the insurance premium which bought 200 acres of the land. The draftsman then stated he did not know these facts; and that had he known them, he would have advised Johnson to give him the home place, and believed testator would have done so. Under these circumstances the issue of undue in-

fluence was involved under the proof, and the court did not err in submitting that issue to be passed upon by the jury.

" ' Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proofs shifts to the caveator.' " *Oxford* v. *Oxford,* supra. " In the probate of a will, the burden of proof is upon the propounder to show all the facts necessary to make a good will, and this includes not only the fact of execution, but that the will is the free act of a man competent, under the law, to make a will. The heirs of a deceased person take his estate by virtue of the statute of distributions, and their rights can only be divested by proof that the deceased died leaving a will by him freely executed according to the forms of law, whilst he was of sound mind." *Evans* v. *Arnold,* 52 *Ga.* 169.

It was for the jury to say whether the propounder had shifted this burden of showing that this instrument was freely and voluntarily executed by the testator, and it was for the jury to say whether under the evidence the ground of caveat alleging that the will was procured by duress had been sustained. It follows that the court did not err in giving to the jury instructions appropriate to this ground of caveat; and we do not think that a new trial should be granted because there was no evidence to authorize the court to submit this issue to the jury. *Smith* v. *Smith,* 75 *Ga.* 477; Moor *v.* Spier, 80 Ala. 129; Bancroft *v.* Otis, 91 Ala. 279 (8 So. 286, 24 Am. St. R. 904).

*Judgment affirmed. All the Justices concur, except*

Beck, P. J., dissenting. I. am compelled to dissent from the judgment of affirmance in this case, being of the opinion that the court below erred in overruling the grounds of the motion for new trial complaining of the instructions to the jury upon the subject of undue influence. Error upon the portions of the charge submitting the question of undue influence to the jury is assigned in several grounds of the motion for new trial referred to in the opinion, and I am of the opinion that each of these grounds should have been sustained by the court because of the lack of evi-

dence to authorize instructions upon that subject. Undue influence, it is true, may be established by circumstantial evidence. Proof of facts or circumstances tending to show that the beneficiaries under the will charged with having exercised undue influence had opportunities for its exercise, had opportunities of practicing upon the fears or weaknesses of the testator to bring about the execution of a will containing provisions in their favor, is admissible to strengthen or give force to any evidence, direct or circumstantial, that may be introduced tending to show that undue influence was actually exerted. But evidence of opportunities for the exercise of undue influence, however strong and convincing, can not take the place of evidence, direct or circumstantial, of the actual employment of undue influence or coercion. Nor will a mere suspicion, however well founded the suspicion is, take the place of evidence.

In the recent work of Daniel H. Redfearn on Wills and the Administration of Estates in Georgia (1923), in a note to § 46, p. 78, the following is quoted from the case of Hall *v.* Hall (1868), L. R. 1 P. & D. 481: "Sir J. P. Wilde, in summing up, gave the following direction to the jury on the question of undue influence: To make a good will a man must be a free agent. But all influences are not unlawful. Persuasion, appeals to the affections or ties of kindred, to a sentiment of gratitude for past services, or pity for future destitution, or the like,— these are all legitimate, and may be fairly pressed on a testator. On the other hand, pressure of whatever character, whether acting on the fears or the hopes, if so exerted as to overpower the volition without convincing the judgment, is a species of restraint under which no valid will can be made. Importunity or threats, such as the testator has not the courage to resist, moral command asserted and yielded to for the sake of peace and quiet, or of escaping from distress of mind or social discomfort,— these, if carried to a degree in which the free play of the testator's judgment, discretion or wishes is overborne, will constitute undue influence, though no force is either used or threatened. In a word, a testator may be led but not driven; and his will must be the offspring of his own volition, and not the record of some one else's." The burden of proving undue influence rested upon the caveators, and evidence having some probative value, either direct or circumstantial in nature, to show that there was actually undue influence used to

bring about the execution of the will must be submitted; else the question as to whether the execution of the will was brought about by undue influence can not be submitted to the jury in the court's charge. There was no evidence of undue influence adduced in this case. I have examined the record carefully and found none. Counsel for the defendants in error, in his brief, sets forth certain evidence which he insists supported his contention that there was undue influence, but I find it nothing more than the proof of the existence of opportunities for the exercise of undue influence, or grounds for suspicion that such was employed, but no evidence, direct or circumstantial, that authorized the submission of the issue to the jury. For that reason I conclude that those portions of the extracts quoted in the majority opinion which submit that issue to the jury were erroneous.