*Leonard Farkas, Walter H. Burt,* for plaintiffs.
*E. L. Smith,* for defendants.

25674. HAMILTON, guardian *v.* FIRST NATIONAL BANK OF ROME.

708

*Wright & Covington,* for plaintiff.
*Maddox, Matthews & Owens,* for defendant.

JENKINS, P. J. Before the act of August 25, 1925 (Ga. L. 1925, pp. 270-272), authorizing the ordinaries of this State to appoint guardians for insane persons without a trial, merely upon the "certificate of the regional manager in charge of the United States Veterans' Bureau in Georgia, or of the medical officer in charge of any government hospital for mental and nervous diseases, that such veteran of the world war has been declared by the United States Government as incompetent to receive the funds to be paid to him" by such government, as amended by the act of August 5, 1929 (Ga. L. 1929, pp. 245-256; Code, §§ 49-801-49-816), providing for a certificate by the director of the United States Veterans' Bureau or his authorized representative, "setting forth the fact that such person has been rated incompetent by the bureau on examination in accordance with the laws and regulations governing such bureau," and further with prescribed procedure, the former law (Code of 1910, § 3103) provided: "The ordinaries of the several counties of this State are authorized to appoint guardians for idiots, lunatics, and insane persons, without a trial, as in section 3092 [requiring ten days notice to the three nearest adult relatives, the appointment of a commission, its examination of the person, and subsequent proceedings], whenever it shall be made to appear to them that such idiot, lunatic, or insane person is in the Georgia State Sanitarium upon commitment thereto, *or when it is shown by the certificate of the superintendent of the lunatic asylum in which the party is confined that such person is hopelessly insane, and it is necessary for such idiot, lunatic, or insane person to have a guardian to take charge of his*

*property.*" On March 2, 1925, before the enactment, on August 25, 1925, of the first amendment of this original statute, a wife applied to the ordinary of Chattooga County, Georgia, for letters of guardianship for her husband, alleging that he was a world-war veteran entitled to receive an allowance from the government, that the government refused to make payment because of his mental condition and incompetency, and that he was under the treatment and direct supervision of the government officials in the United States Government Hospital at Gulfport, Mississippi. There was no notice to adult male relatives, or other proceedings, as required by the law then in force, Code of 1910, § 3092. The instrument relied on as a "certificate" was designated a "report of neuro-psychiatric examination." It stated data as to a physical and mental examination, and, under the head of "recommendations," that "patient [is] suffering from a disorder requiring constant supervision and totally unable to make a social adjustment." It further stated that he should "remain in hospital for further treatment," that "the above diagnosis was concurred in by the medical staff," and that he was "incompetent and needs a guardian;" but also stated that it was "not *at present* . . advisable that the claimant resume his former occupation." This so-called "report" was signed merely by one person as "ward surgeon," by another as "acting clinical director," and concluded with the statement and signature, "Respectfully forwarded—Jo M. Ferguson, M. D., medical officer in charge." On July 6, 1925, the ordinary passed an order adjudicating that the husband was insane, and appointing the wife as guardian of his person and property, basing the procedure on this report. In November, 1930, and subsequently, the husband engaged, in Floyd County, Georgia, in trading and other business transactions, including the one here in question, in which he borrowed $2500 from the defendant bank, and used the proceeds in his purchase of and clearing of title to real estate in that county. As collateral he deposited with the bank certain warehouse receipts for cotton. The note, renewed in August, 1931, remains an outstanding obligation. The original letters of guardianship issued to the wife in 1925 having been revoked upon her application for a new guardian, reciting as the required "certificate" merely the described "report" by the hospital physicians, which had been previously filed with the ordinary, the

ordinary, on June 6, 1932, without any commission, but referring to this report, appointed the instant plaintiff as guardian. He filed this trover suit against the bank for recovery of the warehouse receipts and the cotton covered thereby, which the bank held as collateral. The bank, setting up the facts as above and as hereafter stated, attacked the validity of the order of 1925, appointing the wife as guardian, and of the order of 1932, appointing the plaintiff as guardian; and alleged that the transaction between it and the husband was valid and without any knowledge on its part of any incompetency of the husband; that the transaction had been ratified by the wife as guardian and by the plaintiff as guardian; and that the plaintiff was not entitled to recover without restoring to the bank the money or benefits received from the $2500 loan used in the purchase of real estate which remained in possession of the plaintiff. The plaintiff assigned error on his exceptions pendente lite to the overruling of his demurrer to the plea, and on the denial of his motion for new trial after direction of a verdict for the defendant, which motion is limited to the general grounds. The testimony fully authorized, if it did not demand, a finding that the alleged incompetent was sane or was in a condition of lucid interval at the time when he made the notes to the bank and deposited the warehouse receipts as collateral. Other evidence sustained the averments of the plea. The plaintiff, while assigning error on the refusal of a new trial, relies upon his exceptions pendente lite, attacking the overruling of his grounds of demurrer to the defenses in the plea.

■ "The contract of an insane person, a lunatic, or a person non compos mentis, who has never been adjudicated to be insane, or a lunatic, or of unsound mind as prescribed by the Code, is not absolutely void, but only voidable, except that a contract made by such person during a lucid interval is valid without ratification. After the fact that such person is insane, a lunatic, or non compos mentis has been established by a court of competent jurisdiction in this State, and the affairs of such person are vested in a guardian, the power of such person to contract, even though restored to sanity, is entirely gone, and such contracts are absolutely void until the guardianship is dissolved." Code, § 20-206. This present codificaton of the law, in the light of late decisions of the Supreme Court, enlarges and somewhat modifies the language of

the Code of 1910, § 4237. See *Fields* v. *Union Central Life Ins. Co.*, 170 *Ga.* 239 (152 S. E. 237) ; *Atlanta Banking & Savings Co.* v. *Johnson*, 179 *Ga.* 313 (175 S. E. 904, 95 A. L. R. 1436) ; *Williford* v. *Swint*, 183 *Ga.* 375 (188 S. E. 685) ; *Norman* v. *Georgia Loan & Trust Co.*, 92 *Ga.* 295, 297 (18 S. E. 27) ; *Cason* v. *Owens*, 100 *Ga.* 145 (28 S. E. 75) ; *American Trust & Banking Co.* v. *Boone*, 102 *Ga.* 202, 206 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167). But a void order adjudicating a person mentally incompetent, and appointing a guardian for his property, will not of itself nullify or affect his subsequent power to contract, or afford evidence of his incompetency.

■ In this case the validity of the appointment of the first guardian for the alleged incompetent must be determined under the Code of 1910, §§ 3092-3098 and 3103, as they existed before the amendment of 1925 (Ga. L. 1925, pp. 270-272), providing for the appointment of a guardian for an insane war veteran, without the proceedings required in other cases, merely upon the "certificate" of a regional manager of the veterans' bureau in this State, or of the "medical officer in charge of any government hospital for mental and nervous diseases," and before the amendment of 1929 (Ga. L. 1929, pp. 248-256; Code, § 49-801 et seq.), since all of the proceedings for the appointment of the first guardian occurred before these amendments. Under the original law, it was the general rule that service of notice to the three nearest adult relatives of the alleged incompetent, as to the application for the appointment of a guardian, is "jurisdictional," and that an appointment without the service of such notice "is void and is subject to collateral attack." *Blackwell* v. *Parks*, 166 *Ga.* 631 (144 S. E. 24) ; *Hart* v. *Manson*, 119 *Ga.* 865 (47 S. E. 345) ; *Yeomans* v. *Williams*, 117 *Ga.* 800 (45 S. E. 73) ; *Allen* v. *Barnwell*, 120 *Ga.* 537 (48 S. E. 176) ; *Helton* v. *Helton*, 47 *Ga. App.* 845, 848 (171 S. E. 845) ; *Payne* v. *Shirley*, 25 *Ga. App.* 644 (3) (104 S. E. 17). The Code of 1910, § 3103, provided for an appointment "without a trial, as in § 3092," when it is made to appear that the person has already been committed and is confined in the Georgia State Sanitarium, "or when it is shown, by the certificate of the superintendent of the lunatic asylum in which the party is confined, that such person is hopelessly insane, and it is necessary for such [person] to have a guardian to take charge of his property."

Even assuming that under a proper construction of § 3103 a "certificate" in accordance with its provisions would have dispensed with the required notice to adult male relatives, as well as "a trial," that the original law was intended to cover such a "certificate" from an institution outside of as well as within the State, and that the mere "report" which was the basis of the guardian's appointment in the instant case could be taken as a "certificate," if properly signed by the required official, this instrument was nevertheless entirely defective, and afforded no proper basis for dispensing with the jurisdictional requirement as to notice to male relatives, and for the appointment of the first guardian. At that time the alleged incompetent was in a United States Government Hospital in Mississippi. It was not made to appear that this hospital was a "lunatic asylum," and that the person was "hopelessly insane," as required by the statute. The paper included an intimation that he might later be able to "resume his former occupation." It was signed merely by two physicians, one as "ward surgeon," and the other as "acting clinical director," after which it was only "forwarded" by one signing as "medical officer in charge," without any "certificate" even by him as to the verity of the facts stated in the "report," and without anything to show that he or any one signing the paper was "superintendent" of a "lunatic asylum." Accordingly, the appointment in 1925 of the first guardian for the alleged incompetent and the adjudication as to his insanity were void, and did not render void his subsequent contracts.

■ In this action in trover, by a second guardian appointed for the alleged incompetent in 1932 after the resignation of the first guardian, brought against a bank for recovery of cotton and warehouse receipts, which the alleged incompetent in 1930 and 1931 had pledged to the bank as collateral for a $2500 loan, the undisputed evidence showed that at the time of the transaction in question the alleged incompetent was sane or was capable of transacting business during a period of lucid interval. The void order of 1925 not affecting such proved competency, the court properly directed the verdict for the defendant.

■ The order of 1925 being void under the undisputed evidence supporting the attack in the plea on its validity, the plaintiff's exceptions pendente lite, so far as based on the grounds of de-

murrer attacking this defense, and the grounds of the motion for new trial, which are only general, are without merit. Under the preceding rulings, it is unnecessary to determine other questions presented by the plea, the demurrer thereto, and the exceptions pendente lite, that the order of 1932 appointing the plaintiff as guardian, after the disputed transaction and the resignation of the first guardian, was also void and gave to the plaintiff no right to sue; that both guardians ratified the transaction; and that the plaintiff was not entitled to recover without an offer of restitution of the $2500 consideration received from the bank by the alleged incompetent and invested by him in real estate, of which the plaintiff as last guardian took charge.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*