BRAZIL *et al.* v. ROBERTS, administrator.

No. 14997. NOVEMBER 14, 1944.

*J. L. Smith* and *Willis Smith,* for plaintiffs in error.
*J. L. Glover* and *Boykin & Boykin,* contra.

JENKINS, Presiding Justice. 1. In a motion for continuance

on account of the absence of a subpœnaed witness, in the exercise of the due diligence by the movant required by the Code, § 81-1410, it is specifically provided that it must be shown that "such witness is not absent by the permission, directly or indirectly, of such applicant." In the instant case, counsel for the movant stated in his place in open court that he had seen the subpœnaed witness "yesterday," and that the witness had "told me what a predicament he was in." While counsel for the movant does not disclose to the court what his answer was to this statement by the subpœnaed witness, or whether he made any statement in reply thereto, the statement of the subpœnaed witness was enough to indicate that there was at least uncertainty as to whether or not he would respond to the subpœna in accordance with its summons. When the witness had in fact failed to appear, it was stated in open court by opposite counsel, when the continuance was asked for, that the doctor was within a stone's throw from the court, and that the movant could ask for an attachment. In overruling the motion, the judge stated, "I think you can get Dr. Barker here before the trial ends." It thus appears that, although the movant was put on notice of the uncertainty of attendance by his witness, he failed to show that he refused to take cognizance of his witness's predicament and to insist upon his attendance; and that the movant not only failed to resort to an attachment before the case was called, but apparently chose even then to take his chances on whether or not the witness would appear during the trial, in spite of the predicament which the witness had previously explained to the attorney who had had him subpœnaed. Accordingly, under the circumstances set forth, we do not think that the court abused its discretion in failing to continue the case.

2. "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and in making it acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator." *Oxford* v. *Oxford,* 136 *Ga.* 589 (2) (71 S. E. 883) ; *Ward* v. *Morris,* 153 *Ga.* 421 (112 S. E. 719) ; *Davis* v. *Frederick,* 155 *Ga.* 809 (118 S. E. 206) ; *Bullock* v. *Martin,* 144 *Ga.* 731 (87 S. E. 1058) ;

*Edenfield* v. *Boyd,* 143 *Ga.* 95 (84 S. E. 436) ; *Slaughter* v. *Heath,* 127 *Ga.* 747 (9) (57 S. E. 69, 27 L. R. A. (N. S.) 1) ; *Credille* v. *Credille,* 123 *Ga.* 673 (2) (51 S. E. 628, 107 Am. St. R. 157). Therefore an instruction as to the *burden of proof* on the issue of devisavit vel non, substantially in accord with the above rule, is not subject to the criticism that, in charging that the burden was on the propounder to show that the testator was "apparently" of sound and disposing mind and memory, the expression was "confusing and misleading, and that under the law the testator must be of sound and disposing mind and memory and not 'apparently of sound and disposing mind and memory.' "

3. The court charged: "If you find, from the evidence, that the propounder has made out a prima facie case, then the burden would be shifted to the caveators to show that, at the time of the execution of the alleged will [the testator] was suffering from mental incapacity to make a will, and was also suffering from monomania." This language is criticized for the reason, as contended, that it placed the burden upon the caveators of showing, not only that the testator was insane and therefore incapable of making a will, but also that the will was the result of a monomania from which the testator was suffering, whereas proof of either one would have been sufficient. Immediately following this excerpt, the court defined testamentary capacity, and immediately thereafter gave this additional charge: "If you find, from the evidence, that [the testator] did not have mental capacity, which I have defined to you, *or* that he was suffering from monomania at the time and that the will was the result of the monomania, then, the paper offered for probate would not be his will." Later, the court also gave the following charge: "If you find, from the evidence, at the time the will offered in evidence was executed that [the testator] did not have sufficient mental capacity generally to make a will, *or* that he was suffering from monomania at the time ,and that the will was the result of the monomania, . . then you will return a verdict accordingly, that is, a verdict in favor of the caveators against the propounder." Again, the court charged: "If the propounder in 'this case has made out a prima facie case . . then the burden would be shifted upon the caveators to show general insanity or mental incapacity, *or* that [the testator] was suffering from monomania, and that he was incapable and incapaci-

tated from making a will, under the rules of law I have given you in charge as to making a will, under the law and under the evidence in this case." The court also charged separately on the effect of insanity and of monomania in the execution of a will. Virtually the identical question now presented was before this court in *Franklin* v. *First National Bank of Atlanta*, 187 *Ga.* 268 (200 S. E. 679), in which the court had charged that, upon the shifting of the burden of proof, it was incumbent on the caveators to establish the grounds of their caveat, which were undue influence *and* monomania, by a preponderance of the evidence before the jury would be authorized to find in favor of the caveators. The contention was there made that, inasmuch as the caveat asserted two separate and distinct grounds, either of which, if established, would have vitiated the instrument offered for probate, the charge placed too heavy a burden on the caveators in requiring them to prove both. The court there, while conceding that the language may have been technically inapt, held that it was not ground for a new trial, where other portions of the charge clearly stated that, if the will was executed either under undue influence or monomania, the caveat should be sustained. While the same inaptness of expression is involved here, in view of the fact that the court charged separately as to the effect of insanity and of monomania in the execution of a will, and, after giving the excerpt complained of, clearly and repeatedly charged correctly the burden of proof resting upon the caveators, as being the establishment of either of their contentions as to the testator's incapacity to make a will, whether by virtue of his insanity or by virtue of his monomania, we do not see how the jury could have been misled or could have misunderstood the law as to the correct burden of proof resting upon the caveators after the burden had shifted to them upon a prima facie case having been made out by the propounder. In view of the instruction given in immediate connection with the excerpt complained of and in several other portions of the charge, we think it manifest that what the court meant was that, when a prima facie case was made out for the propounder, the burden of proof was shifted to the caveators as to both of their contentions, but that upon proof of either they would be entitled to prevail.

4. The court gave the following charge: "Gentlemen, if you find from the evidence, at the time the will offered in evidence was

executed, that [the testator] did not have sufficient mental capacity generally to make a will, or that he was suffering from monomania at the time and that the will was the result of the monomania, *under the law as I have given you in charge,* then you will return a verdict accordingly, that is, a verdict in favor of the caveators against the propounder. But if you find from the evidence in this case, that at the time the will was executed that generally [the testator] was of sound and disposing mind and memory, that he had sufficient mental capacity to make a will, *under the law I have given you,* then it should be set up as the last will and testament of [the testator] by the jury." The only exception is in the following language: "Movants contend .that the charge was error, harmful and prejudicial, for the reason that the law requires that a testator at the time of the execution of a will must be of sound and disposing mind and memory, and not [of] sufficient mental capacity generally to make a will, but that he must be of sound and disposing mind and memory at the time of the execution of the will, and must have a decided and rational desire as to the disposition of his property." In this excerpt the court did in effect charge the jury that, in order to find for the will, they must find that the testator was of general sound and disposing mind and memory (as distinguished from monomania) at the time the will was executed, and that he had sufficient general mental capacity to make a will under the law given to the jury by the court. In the subsequent portion of the excerpt excepted to, in which the word "generally" was again used, the court also expressly referred to the time at which the will was executed and added the words, "that he had sufficient mental capacity to make a will," and in this connection referred to the already defined testamentary capacity in the language of the Code, § 113-202, as follows: "An incapacity to contract may coexist with a capacity to make a will. The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided, as distinguished from the wavering, vacillating fancies of a distempered intellect. It must be rational, as distinguished from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard." The charge must be considered

as a whole, and the excerpt complained of, in referring to "sufficient mental capacity," related it to the definition thereof previously given. Consequently, the charge seems not only to conform to the requirements of the law, but also to meet fully the criticism directed against it.

5. Exception is taken to the exclusion from evidence of a certified copy of lunacy proceedings against the testator, filed in the court of ordinary of Haralson County, on November 9, 1940, the petition reciting that he had no relatives; a guardian ad litem having been appointed, who waived notice and agreed to a hearing instanter, and the commission appointed having made their findings; and a judgment having been entered, adjudging him to be a lunatic and committing him to the State Sanitarium, all on November 9, 1940, upon which an order was entered on November 18, 1940, reciting that it now appears that the alleged lunatic has as many as three relatives residing in Carroll County, and the order setting aside and vacating said judgment of commitment. This ruling was complained of for the reason that it would have shown that the testator was insane and adjudged insane a year before the execution of the will; and the presumption of the law would be that he continued in that condition, and the burden would then have been upon the propounder to show sufficient mental capacity to make a will. In *Allen* v. *Barnwell,* 120 *Ga.* 537 (48 S. E. 176), this court said: "A judgment appointing a guardian for a person alleged to be insane is void where the record shows that the proceedings were begun and concluded in one day, and that there was an absence of the statutory notice to the relatives, or of like notice to a guardian ad litem if there were no such relatives in this State." See also *Powell* v. *Harrison,* 180 *Ga.* 197, 207 (178 S. E. 745). In *Yeomans* v. *Williams,* 117 *Ga.* 800 (45 S. E. 73), the court said: "The ordinary has no authority to issue a commission of lunacy under the Civil Code, § 2573, where the alleged lunatic has three adult relatives living in this State, until after the expiration of ten days from the time notice has been given to such relatives of the proceeding. The relatives thus to be notified cannot confer jurisdiction upon the ordinary by waiving the notice prescribed by law." In *Hamilton* v. *First National Bank of Rome,* 54 *Ga. App.* 707 (188 S. E. 840), the court said: "On application of the law relating to contracts of persons insane

or mentally incompetent, a void order adjudging one mentally incompetent, and appointing a guardian, will not of itself affect his power to contract, or afford evidence of his incompetency." In the present case, the court itself recognized the invalidity of the order and set it aside. A void adjudication of lunacy could have no evidentiary value, and this is especially true where the adjudication itself has been set aside.

6. Exception is taken to the refusal to admit in evidence the depositions of the two physicians and the attorney who comprised the jury commissioned by the court of ordinary to determine as to the insanity of the testator, which depositions were offered "to show that they examined, tried, and found [testator] insane on November 9, 1940." The two physicians testified in the case. Consequently, in no event could there have been error in excluding their depositions generally so far as they related to their opinions as to the testator's sanity, concerning which they both testified. The attorney was a lay witness as to the question of insanity, and his opinion on this question, if accompanied by the facts on which it was founded, would have been admissible. *Morgan* v. *Bell,* 189 *Ga.* 432 (3), 436 (5 S. E. 2d, 897). But it was not offered for that purpose, but only to show that the lunacy commission had examined, tried, and found the (testator) insane on November 9, 1940. Had the adjudication not been void, a finding of insanity would have been relevant evidence, but even then a duly authenticated copy of the record in the court of ordinary would have been the highest and best evidence of such a finding.

*Judgment affirmed. All the Justices concur.*