19972. HAWKINS, Executor, *v.* HODGES *et al.*

SUBMITTED JANUARY 15, 1958—DECIDED FEBRUARY 10, 1958.

*Orrin Roberts, W. Dan Greer, Thomas O. Davis,* for plaintiff in error.

*D. M. Pollock, A. M. Kelly,* contra.

MOBLEY, Justice. 1. While the subscribing witnesses testified that, at the time of the signing of the will, the testatrix "appeared to be of sound mind," and "that she looked of sound mind" and "looked bright and alert"; that she did and said things that indicated she knew what was happening about her; that she was signing her will—there was conflicting testimony to the effect that she was not of sound mind and did not know what she was doing at the time she signed the will. Her physician, who saw her the day before and the day after the signing of the will and who had the benefit of the information contained in her hospital chart on the day she signed the will, testified: "Knowing of her disease process and knowing that she was having considerable difficulty in breathing, I would doubt that she would be able to concentrate well on any particular subject. In this disease process, at this particular state, a person is quite concerned just with the act of breathing, and of course breathing is very important, and I doubt that she could concentrate clearly in the disposition of her property in making a will." And also, "Based on what is contained in the records of the hospital on that particular day, in my opinion she would not be able to concentrate to the extent that she would be able to understand the nature of her actions. What I was trying to imply was she would be so preoccupied with just the act of breathing, that she would care nothing of what was going on." Three witnesses, testifying in behalf of the caveators, saw the testatrix on the day she signed the will, in the morning before and in the afternoon after she had signed it. In the afternoon when these witnesses were there, she told them that she had that day made a deed to Gerald Hodges to his lot where he built his house, when she had in fact deeded this lot to him years before. They each testified that, because of her advanced age and general physical condition, she being very weak, hard of hearing, barely able to see, having difficulty in breathing, all caused from the last stages of cancer, the things

they saw and heard, in their opinion her mental condition was such that she would not have had any decided and rational desire as to the disposition of her property; and one of them testified that she did not think the testatrix had sufficient mental ability to know what she was doing "from the way she looked and all." Other witnesses, who saw her the day before and the day after the signing of the will and who had been seeing her before she went to the hospital and during the fifteen days she had been in the hospital before signing the will and who saw her thereafter until her death, testified as to her condition, including general weakness, inability to breathe, almost total blindness and deafness; and it was their opinion that, on the day of the signing of the will, she did not have the mental capacity to know what she was doing. Clearly the evidence as to mental incapacity to make a will raised an issue for determination by a jury, and the evidence thereon was sufficient to support the verdict of the jury.

As to the issue of undue influence, alleged to have been exerted by the propounder upon the testatrix, the evidence showed that the propounder was the husband of the testatrix's deceased sister and the father of Miriam, a niece whom testatrix had partially reared and to whom she was devoted; that he and his family had lived in the home of testatrix; and that he occupied a confidential relationship to her, both as a member of the family and as a business adviser and consultant. The propounder testified that he got an attorney in Decatur to draft testatrix's will according to her instructions, and that he went back to the lawyer and had him draft another will, the one before us, making certain changes therein which he had suggested that testatrix make. His testimony was that the change made was to leave his daughter one-third rather than one-half of the property left by the will. There was evidence that the propounder stayed in the hospital constantly from the time the testatrix entered there on September 27 until the signing of the will on October 11; that he tried to prevent the caveators, a niece and nephew of the testatrix, and other relatives from staying in the room with her for any length of time; and that he remained with them while they were there and tried to discourage them from going to see the testatrix, but after the will was signed they saw no more of him. There was testimony that the propounder had sold timber off the land owned by testa-

trix, for which he never accounted; that a $1,200 note which she held against him, along with $15,000 or $20,000 in stocks and bonds, had disappeared and could not be found after testatrix died. And the caveators contended that the propounder had had inserted in the will item 4 which provided: "I herewith make known that I have heretofore made disposition of my stocks and bonds and other real property," for the purpose of confirming transfers of several parcels of real estate to his daughter, deeds to which had remained in the possession of testatrix until her death and had not been recorded until thereafter, and to confirm the transfer and disposition of the stocks and bonds that had disappeared. "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator." Code § 113-208. "Forces so subtle, so multiform, so variant in each case in which they may be disclosed, and in which the proof of their existence is so often dependent upon circumstances, present questions in which the court should properly leave any doubts which may arise from the evidence to the solution of 'the doctors of doubt, the jury.' . . A very wide range of testimony is permissible on the issue of undue influence. This is due to the fact that undue influence seldom can be shown except by circumstantial evidence. It results from the circumstances and surroundings of the testator and his associations with the person or persons exercising the undue influence. For this reason it is proper on this issue, to consider the testator's dealings and associations with the beneficiaries; his habits, motives, feelings; his strength or weakness of character; his confidential, family, social, and business relations; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw light on the issue raised by the charge of undue influence." *Stephens* v. *Bonner,* 174 *Ga.* 128 (2, 4) (162 S. E. 383).

We are of the opinion that the evidence made a jury issue on the question of undue influence and that the verdict is not without evidence to support it. The general grounds of the motion for new trial are without merit.

2. In special ground 1, plaintiff in error contends that the court erred in admitting the following testimony of Dr. Bryan Redd, a witness for the caveators, to wit: "I doubt that she could concentrate clearly in the disposition of her property in making a will," which was in response to the question from caveators, "Would you say she had sufficient mental capacity to understand the nature of what she was doing in the disposition of her property in making a will?" "What is mental capacity to make a will is a question of law. On the trial of an issue of devisavit vel non, whether the alleged testatrix had mental capacity to make a will at the time of signing the paper is a question for decision by the jury, and a witness can not testify as to such legal conclusion." *Smoot* v. *Alexander*, 188 *Ga.* 203 (3 S. E. 2d 593), and cases cited. In answer to the question, the witness testified, immediately prior to making the statement objected to, as follows: "In all fairness, I cannot specifically prove that I saw the patient on October 11, but, in my opinion, from having seen her the day before, knowing that she was having difficulty in breathing, I would rather doubt that she would be able to concentrate well on any particular subject. In this disease process, at this particular state, a person is quite concerned with just the act of breathing, and of course breathing is very important, and I doubt that she could concentrate clearly in the disposition of her property in making a will." The statement of the doctor, that "I doubt that she could concentrate clearly in the disposition of her property in making a will," is not synonymous with or equivalent to a statement that he doubted whether she had mental capacity to make a will. What the substance of his testimony amounted to was that she was in such physical condition and having so much difficulty in breathing, that she could not concentrate clearly in the disposition of her property, not that in his opinion she did not have sufficient mental capacity to make a will. This ground is without merit.

3. The admission over objection of testimony of one of the caveators, that the will offered for probate did not contain the same provisions as the will read to the witness and other relatives by the propounder a day or two after the death of the testatrix, was error. The caveat raised two grounds of objection, mental incapacity and undue influence. There was nothing in the

pleadings raising the issue that the will offered for probate was not in fact the will made by the testatrix. "Testimony which does not illustrate any issue made by the pleadings should be repelled." *Peagler* v. *Davis,* 143 *Ga.* 11 (5) (84 S. E. 59, Ann. Cas. 1917 A 232). "Evidence ought not to be admitted unless it be applicable to some issue made in the pleadings." *Bower* v. *Douglass,* 25 *Ga.* 714 (2). Such evidence, the effect of which was to accuse the propounder of substituting pages with different provisions for pages in the will left by the testatrix, was such prejudicial error as to require the grant of a new trial. Special ground 3 is meritorious.

4. Special ground 4, which complains of the charge on fraud, is without merit. It is admitted that the charge as given was correct, but it is contended that the charge was not applicable to the issues and facts in the case. There was evidence of fraudulent acts on the part of the propounder on the question of undue influence, and the charge was applicable to the issues and evidence in the case.

5. Special grounds 5, 6, and 7 complain of the charge of the court, while giving the contentions of the parties, in reading certain paragraphs of the caveat to the jury, the objection being that there was no evidence to support said allegations, which dealt with the questions of mental incapacity and undue influence. There was evidence, as we have pointed out in discussing the general grounds, on both of these issues, and there was no error in the court's reading to the jury the paragraphs referred to.

6. Special ground 8 contends that the court erred in charging the jury as follows: "When the person who prepares a will, or conducts the execution of it, is himself benefited by the disposition, evidence of the signing alone would not be sufficient, but the proof must go to a knowledge of the contents of the will. The rule of law is that whenever the capacity of the testatrix, at the time of the execution of the will, is in any degree doubtful, there must be proof of instructions given, or reading it over." This portion of the charge presents a correct abstract principle of law. *Harvey* v. *Anderson,* 12 *Ga.* 69, 76; *Beall* v. *Mann,* 5 *Ga.* 456, 470; *Davis* v. *Frederick,* 155 *Ga.* 809, 817 (118 S. E. 206). However, the propounder, who conducted the execution of the will, was not benefited by its disposition. He was named

as executor, but this did not constitute a benefit within the rule stated in the charge. *Woodson* v. *Holmes*, 117 *Ga.* 19 (5) (43 S. E. 467). In the absence of any evidence that the propounder was benefited under the will, the charge was calculated to confuse and mislead the jury, in that it amounted to an expression of the court that he was so benefited, and placed a burden upon the propounder of establishing knowledge of the contents of the will, which was not authorized by the evidence.

The charge excepted to in ground 9, that "The presumption is strong against the party preparing the will, who takes a benefit under it and strong evidence of the intention in such case would be required," was, for the same reasons given above, inapplicable to the evidence. Grounds 8 and 9 are meritorious.

7. The ruling on the general grounds disposes of special grounds 10 and 11, complaining that the court erred in submitting to the jury for its consideration the question of mental capacity of the testatrix and the question whether undue influence was practiced upon her.

8. In ground 12 it is contended that the court improperly admitted over objection testimony of one of the caveators that "There was no other accounting for any of the other property of the estate at the time." The witness had testified in regard to a meeting of the heirs of the testatrix a few days after her death, at which time the will was read by the propounder, and he handed over to the caveators certain stocks and bonds which had been assigned to them prior to the death of the testatrix. The testimony was in response to the question, "Was there any other accounting for any other property of the estate at the time?" This testimony was wholly irrelevant and immaterial to the issues of mental incapacity and undue influence. The propounder, who was named executor in the will, was under no duty to account to anyone for the property of the estate at that time. The will had not been offered for probate, and he had no authority to take charge of the property or to account until the will was probated and he had qualified as executor. The property delivered was not property of the estate but was stocks and bonds that had been assigned to the caveators by the testatrix prior to her death. This ground is meritorious.

*Judgment reversed. All the Justices concur.*